Filed 7/17/15  West Hills Research and Development, Inc. v. Wyles CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WEST HILLS RESEARCH AND DEVELOPMENT, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TERRENCE M. WYLES, <br><br> Defendant and Appellant. | B255768 <br><br> (Los Angeles County <br> Super. Ct. No. BC516417) |

        APPEAL from an order of the Superior Court of Los Angeles County.  Holly E. Kendig, Judge.  Affirmed.

        Law Offices of James P. Wohl, James P. Wohl and Niall A. Fordyce for Defendant and Appellant.

        Loeb & Loeb, Daniel Platt and William Brody for Plaintiff and Respondent.

_____

West Hills Research and Development, Inc. (West Hills) sued Terrence M. Wyles for misappropriation of its trade secrets. Wyles moved to strike the complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16)[1] and appeals the trial court's denial of his motion. Because Wyles fails to demonstrate the activity about which West Hills complains is protected under the anti-SLAPP statute, we affirm the order denying the special motion to strike.

## FACTS

West Hills is a medical products company which developed a series of bandage products intended to instantly relieve pain from burn injuries. West Hills holds international patent applications in connection with these products. Wyles is an attorney licensed to practice in Colorado. On October 12, 2012, West Hills hired Wyles as its in-house counsel specializing in intellectual property. West Hills terminated Wyles on April 5, 2013.

On July 26, 2013, West Hills sued Wyles, alleging a dozen causes of action, including breach of loyalty, breach of confidence, misappropriation of trade secrets, intentional interference with economic advantage, negligent interference with economic advantage, computer fraud and abuse, conversion, and unfair competition. In addition, West Hills sought declaratory judgment and injunctive relief along with money damages for Wyles' alleged misconduct. The gravamen of West Hills' complaint rests on the allegation that Wyles stole its trade secrets to set up a competing business after he was terminated.

Wyles moved to strike the complaint on the ground it sought to chill his right of petition under the SLAPP statute in connection with issues under consideration or review by a judicial body. (§ 425.16.) In support of the anti-SLAPP motion, Wyles submitted a declaration accusing West Hills' senior officers of embezzling over $2 million from the company during the course of his employment. These officers included the chief executive, Carl Freer, his wife, Ericka Freer, and another officer, James Hunt, who

---

[1] All further section references are to the Code of Civil Procedure unless otherwise specified.

2

replaced Freer as the CEO.  Wyles also implicated a partner at the law firm, Loeb & Loeb,[2] Allen Sussman, of participating in the misconduct.

Wyles asserted he gathered proof of the embezzlement and was anonymously sent bank records which documented the fraud.  From these documents, he drafted an executive summary entitled, *Aluminaid*[3] *Gross Fiscal Malfeasance* to disseminate to other executives and board members of the company.  In his declaration, he stated he intended to report the activity to the police and tax authorities as well as initiate a shareholders derivative action.  Wyles was a shareholder of the company as part of his compensation package and thus had standing to file a derivative action.  He believed he was fired as a result of his whistleblowing activities.  Wyles argued the conduct underlying West Hills' complaint is protected by the privilege set forth in Civil Code section 47, subdivision (b), covering pre-litigation communications.

In his declaration, Wyles also denied misappropriating West Hills' trade secrets.  With respect to West Hills' allegation that Wyles "improperly access[ed] Aluminaid's servers and download[ed] emails and files that contained confidential and proprietary information, including Trade Secrets," Wyles stated that "matter is untrue and [he] only accessed time sensitive government documents in connection with [his] role as Chief In-House Counsel."  Wyles similarly denied he failed to return West Hills' trade secrets documents, for which he had the only copy, or deleting emails that contained trade secrets.

However, Wyles admitted in a second declaration he retained documents after his termination from West Hills and has refused to "turn over the documents for which Sussman has threatened to report me to the Colorado State Bar . . . ."  He claimed that these documents include financial information which show "embezzlement, tax fraud and possible money laundering."  He asserted he informed David Warnock, the company's CFO and also a shareholder, of his "plan to file an action."  He stated, "I followed up

---

[2]    Loeb & Loeb represents West Hills in this appeal and at the trial level.

[3]    West Hills is formerly known as Aluminaid.  It is also the name of the product sold by West Hills.  The parties frequently refer to West Hills as Aluminaid.

upon [the derivative action] after being terminated.  The action was not only envisioned, but it was the subject of my reports to my superiors, and was fleshed out as to damages by way of the Executive Summary."  Wyles also submitted a sworn declaration by Joesph Sandoval, a former West Hills' director, who corroborated Wyle's story about the embezzlement and misappropriation of company funds.

West Hills opposed the motion to strike on the ground the conduct underlying its complaint—the misappropriation of its trade secrets—lacks any connection with the purported financial misconduct Wyles accused West Hills' executives of perpetrating.  Sussman submitted a declaration showing he demanded Wyles return all files, records, and property of West Hills as well as submit a report of the status of all pending matters.  Wyles refused.

West Hills also submitted documents which showed it sought help from the Colorado State Bar and the Colorado Supreme Court to recover the documents and information it accuses Wyles of misappropriating.  In response to the Colorado Supreme Court's inquiry, Wyles submitted a thumbdrive containing some 14,000 files that appear to be Wyles' work for Carl Freer's various companies, including Aluminaid.  West Hills contended these files include its trade secrets.  Wyles also confirmed to the Colorado Supreme Court that he returned all confidential documents to West Hills, but kept copies of these materials "in order to respond to Aluminaid's claims, to preserve the evidence for the benefit of Aluminaid shareholders, and in order to preserve evidence of Aluminaid's illegal conduct in order to prevent the continuation of that conduct."

West Hills also submitted a sworn declaration from Tom Brady, who is a fire captain with the Los Angeles County Fire Department and who is also a consultant for West Hills' products.  Brady described Wyles and Sandoval's attempts to recruit him to join their new venture, which they said would take over West Hill's operations and patents.  Brady further recounted seeing an agreement between the new venture and one of West Hills' chief competitors.  Wyles and Sandoval told Brady that Freer had left the country with company funds.

4

In his second declaration, Wyles denied any attempts to form a competing business or disclose confidential information to a third party. Instead, he asserted the purported confidential information was disclosed in patent applications submitted in 2013, prior to his termination.

The trial court denied Wyles' anti-SLAPP motion in its entirety, finding Wyles failed to show the misappropriation of trade secrets was protected activity under Code of Civil Procedure section 425.16. Wyles appealed the trial court's ruling on April 18, 2014.

On August 6, 2014, West Hills sought to recover its attorney fees in the amount of $223,767.40. The trial court took judicial notice of a complaint filed on August 12, 2014, by Wyles in Colorado State Court against Aluminaid and West Hills, among others. The complaint alleged nine causes of action, including breach of employment contract, wrongful termination, libel and slander, and shareholder derivative liability. The attorney fees motion was denied by the trial court, who found the anti-SLAPP motion was not filed frivolously. West Hills did not appeal the trial court's denial of its attorney fees motion.

**DISCUSSION**

Wyles challenges the trial court's denial of his anti-SLAPP motion on the ground his activities in preparation for filing his shareholder derivative lawsuit undeniably constitute protected pre-litigation communication under Civil Code section 47(b). Wyles believes the trial court erred by failing to address this argument. Wyles asserts all 12 of West Hills' causes of action are at least partly based on his intention to file a derivative action since West Hills expressly incorporated all of its previous allegations into each cause of action, including those relating to the derivative lawsuit. We disagree.

I.     **Applicable Law and Standard of Review**

The anti-SLAPP statute provides a special procedure for striking meritless causes of action which seek to chill the exercise of a defendant's First Amendment rights. (Code Civ. Proc., § 425.16, subd. (a).) "The statute requires two steps for striking a cause of action. In the first step, the court is tasked with determining whether the

5

defendant has made a threshold showing that the challenged cause of action is one 'arising from protected activity.' In this step, the moving defendant must demonstrate that the acts upon which the plaintiff's claim is based were taken in furtherance of the defendant's right of petition or free speech under the federal or state Constitution. If the court finds this threshold showing has been made by the defendant, the court must then determine whether the plaintiff has demonstrated a 'probability of prevailing' on his or her claim. [Citation.])" (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 443 (*Gerbosi*).)

A court must "examine the *principal thrust or gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies . . . ." (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519–522.) "A cause of action arises from protected activity if 'the defendant's acts underpinning the plaintiff's cause of action involve[s] an exercise of the right of petition or free speech.' [Citation.]" (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 266.) Section 425.16, subdivision (e) defines such conduct to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Clauses (1) and (2) of Code of Civil Procedure section 425.16, subdivision (e), parallel the litigation privilege provided in Civil Code section 47, subdivision (b). (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 650, disapproved on other grounds by *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.) Accordingly, activity which is privileged under Civil Code section 47 subdivision (b) is also protected activity under the anti-SLAPP statute. (*Wang v. Hartunian* (2003)

6

111 Cal.App.4th 744, 751.)  The privilege articulated under Civil Code section 47 subdivision (b) applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)  This privilege is extended to communications made outside the courtroom and to steps taken prior to trial or related proceedings.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)

The second prong of the anti-SLAPP analysis, requiring the plaintiff show a probability of prevailing, presents a low burden.  This is because the plaintiff need only show a reasonable probability of prevailing, not by a preponderance of the evidence.  (*Gerbosi, supra*, 193 Cal.App.4th at p. 446.)  For this reason, a court must apply a "summary-judgment-like" test.  (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714, overruled on other grounds by *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 1212.)  Thus, we do not reweigh the evidence, but accept as true all evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated the evidence submitted by the plaintiff as a matter of law.  (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 105–106; *Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573–574 (*Chalilpoyil*).)

We review an order denying an anti-SLAPP motion de novo, employing the same two-step procedure the trial court did.  (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1218.)  If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion.  (*Robles v. Chalilpoyil, supra*, 181 Cal.App.4th at pg. 573.)

## II.     The Gravamen of the Complaint Does Not Implicate Protected Activity

Here, the gravamen of the complaint rests on West Hills' allegations that Wyles improperly accessed its trade secrets to form a competing venture.  This conduct forms the basis for all the causes of action in West Hill's complaint, except for the fifth and sixth causes of action, which are discussed separately.  An examination of each of the

7

causes of action illustrates that pre-litigation activity is not the basis for West Hills' complaint. Wyles has failed to meet his burden of showing that the challenged conduct arises from protected activity.

West Hills defines the term trade secrets as "patented products, engineering and scientific research data, financial information, financial plans, marketing plans and research, private customer information, pricing formulae, cost information, financial structure, operational data, business plans and strategies []." In its complaint, West Hills alleges Wyles improperly accessed its computers and converted its computer files containing trade secrets without its consent (first cause of action), disclosed West Hills' trade secrets to third parties (second cause of action), misappropriated its trade secrets (third and fourth causes of action), committed computer fraud by accessing its network after he was terminated and obtaining its trade secrets to unfairly compete with it (seventh cause of action), deleted trade secret information from West Hills' servers (eighth cause of action), and took possession of its confidential information (ninth cause of action).

In the tenth cause of action, West Hills alleges Wyles' attempts to form a competing business constituted unfair competition under Business and Professions Code section 17200. As a result, West Hills seeks a judicial determination that Wyles "has no ownership interest in the intellectual property and proprietary information" in its eleventh cause of action for declaratory relief. Finally, West Hills seeks to enjoin Wyles from disclosing any of West Hills' trade secrets in its twelfth cause of action for injunctive relief. None of these causes of action relate to a shareholder derivative lawsuit. That West Hills may have included a standard paragraph repeating and incorporating by reference its other allegations into each cause of action does not change the primary thrust of these causes of action. (*Kajima Engineering & Construction, Inc.* (2002) 95 Cal.App.4th 921, 932 ["to strike an entire complaint based simply on the incorporation of prior allegations would unnecessarily expand the anti-SLAPP statute . . . ."].)

8

The evidence submitted with the papers further support our conclusion. Wyles admits in his declaration he retained West Hills' documents after his termination and has refused to "turn over the documents for which Sussman has threatened to report me to the Colorado State Bar . . . ." Although he asserts these documents contain financial information which he used to support his embezzlement claims, Wyles does not deny trade secret documents are also included in the cache. Indeed, Hunt's declaration lists some of the trade secret documents Wyles has in his possession, including a confidential business plan, drafts of a patent application that are privileged and confidential, a confidential technical product description, and confidential agreements with potential partners. These documents extend far beyond the financial documents necessary for a shareholder derivative lawsuit based on financial malfeasance. Moreover, Wyles' alleged attempt to set up a competing business is not protected activity under the anti-SLAPP statute and has nothing to do with the shareholder derivative lawsuit.

In short, Wyles fails to demonstrate his purported shareholder derivative lawsuit is the primary basis for West Hills' complaint. Any reference to the derivative lawsuit is ancillary to the primary thrust of the allegations. (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 866 ["[t]he statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding"]; *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 ["collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute."].)

In any case, Wyles' alleged misappropriation of West Hill's confidential information and attempt to set up a competing business, even if done in anticipation of litigation, is not protected conduct under Civil Code section 47. First, Civil Code section 47 protects communications, not actions. (*Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 482 [section 47's privilege attached only to statements or publications made in connection with judicial proceedings].) It is clear that the conduct complained of is the act of misappropriating trade secrets, not any communications made by Wyles in connection with a judicial proceeding. Neither is the attempt to form a

9

competing business a communication. Even if we view Wyles' preparation of the executive summary as a communication, there is no indication it was drafted in anticipation of a judicial proceeding. Instead, the summary specifically identifies issues which require further investigation, and makes no mention of possible litigation. Second, wrongful conduct undertaken to obtain evidence in anticipation of litigation is not privileged under Civil Code section 47. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 211-212.)

This case is different from the case cited by Wyles, *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294 (*Paladino*). There, the defendant was in-house counsel for the plaintiff. She was told she was terminated because the film project she worked on "did not go well." (*Id.* at p. 298.) She believed she was terminated for her frequent use of pregnancy leave and decided to file a wrongful termination suit. She sent a copy of the complaint to the plaintiff for its review for any potential trade secret disclosures. The plaintiff responded by suing the employee for breach of contract and breach of the duty of loyalty because she kept its confidential documents and disclosed confidential matters and trade secrets to her attorneys. (*Id.* at p. 299.) The plaintiff described the confidential documents as "information about the way Fox structures business transactions and legal advice rendered in connection with a film project which was the subject of ongoing litigation." (*Id.* at p. 299.)

The trial court's denial of the employee's anti-SLAPP motion was reversed on appeal. The employee's actions fell within the activity protected by the anti-SLAPP statute. The appellate court reasoned that it could not say, as a matter of law, that the employee's failure to return the allegedly confidential material was not an act in furtherance of the preparation and prosecution of her wrongful termination suit. (*Id.* at p. 308.)

Although the facts in *Paladino* bear superficial similarities to those in this case, it is markedly different. In *Paladino*, the purported confidential information was relevant to the employee's wrongful termination lawsuit. The employee was told she was terminated because her film "did not go well." The confidential material contained

10

information about "legal advice rendered in connection with a film project," presumably the one on which the employee worked. By contrast, the trade secret material Wyles allegedly kept does not relate to the shareholder derivative lawsuit at all, having nothing to do with financial malfeasance.

## III. West Hills Has Shown a Probability of Prevailing on the Fifth and Sixth Causes of Action

In the fifth and sixth causes of action for both intentional and negligent interference with economic advantage, West Hills alleges Wyles disrupted its economic relationship with its investors as a result of "Wyles' attempt to organize a shareholder legal action adverse to West Hills and its management . . . ." But for Wyles' activities, West Hills claims there was a reasonable probability it would have raised approximately $4.5 million in necessary funding. West Hills submitted a declaration from Joe Marten, who is the CEO of Aluminaid Pte. Ltd., located in Singapore. He stated he considered making a $5 million capital investment in West Hills in 2013, but he "decided the risk of making such a large investment in West Hills' U.S. operations was too high, especially while Mr. Wyles was seeking to compete with and damage the company." "Specifically, [Marten] heard that Mr. Wyles had accused Mr. Freer of stealing company money and absconding to Singapore. [Marten] also learned that, among other things, Mr. Wyles was attempting to compete with West Hills' business and considered himself an inventor, in control of the technology at the core of West Hills' business."

According to Wyles, he knew Marten and corresponded with him in connection with his role as in-house counsel. However, Wyles' discussion with Marten involved other companies owned by Freer, not West Hills or Aluminaid. Wyles also denied knowing about the purported investment Marten was interested in making in West Hills.

The record shows that in 2013, when Marten was considering making an investment in West Hills, Wyles had yet to file any shareholder derivative lawsuit. Neither had he taken any concrete steps to do so. However, Wyles told Warnock of his plan to file such an action. To the extent it was Wyles' statements regarding a potential

11

derivative lawsuit which comprise West Hills' fifth and sixth causes of action, it appears to constitute protected activity under the anti-SLAPP statute.

However, we conclude these two causes of action need not be stricken because West Hills has shown a probability of prevailing. The elements necessary to prove intentional interference with prospective economic advantage are: " '(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.' [Citations.]" (*Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 521-522.)" " 'The tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care.' [Citation.]" (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 348, italics omitted.) Thus, the elements for negligent interference mirror those of intentional interference with the exception that the third element requires the defendant owes a duty of care to the plaintiff and negligently breaches that duty. (*Lange v. TIG Ins. Co.* (1998) 68 Cal.App.4th 1179, 1187.)

West Hills has presented a prima facie case of intentional and negligent interference with economic advantage. There is no dispute Wyles knew of Marten; he had been corresponding with him. Wyles was also privy to West Hills' financial circumstances. Indeed, Hunt believed that "Wyles was aware of [Marten's] potential investment and would have been aware that West Hills was attempting to find additional investments of this nature." Marten's declaration sets forth his intention to invest in West Hills, which was disrupted by Wyles' conduct. This evidence is sufficient to surmount the low hurdle presented by the second prong of the anti-SLAPP statute. The trial court's denial of Wyles' special motion to strike as to these two causes of action was proper.

12

## DISPOSITION

The order denying Wyles' special motion to strike under Code of Civil Procedure section 425.16 is affirmed.  West Hills is awarded its costs on appeal.

BIGELOW, P. J.

We concur:

RUBIN, J.

GRIMES, J.

13