[No. D058312. Fourth Dist., Div. One. Mar. 20, 2012.]

DARIN JOHNSON, Plaintiff and Appellant, v.
RALPHS GROCERY COMPANY et al., Defendants and Respondents.

**COUNSEL**

Phillips, Haskett & Ingwalson and Frederick C. Phillips for Plaintiff and Appellant.

Law Office of Joseph R. Zamora, Joseph R. Zamora; Liebman, Quigley, Sheppard & Soulema and James J. Rij for Defendant and Respondent Ralphs Grocery Company.

Bradley & Gmelich, Barry A. Bradley, James N. Kahn and Lena J. Marderosian for Defendants and Respondents Special Operations International, Inc., Michael Robinson and Jessie Barraza.

**OPINION**

**McCONNELL, P. J.**—After she was prosecuted criminally for shoplifting, Darin Johnson brought this civil action against Ralphs Grocery Company (Ralphs); its independent contractor security company, Special Operations International, Inc. (SOI); and SOI employees Michael Robinson and Jessie Barraza.[1] Johnson contends the court erred by granting defendants' special motions to strike the malicious prosecution cause of action under the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16).[2] She asserts the cause of action does not arise from protected activity within the meaning of section 425.16, and even if it does, she met her burden of showing a probability of prevailing on the merits. Johnson also contends the trial court erred by sustaining Ralphs's demurrer without leave to amend on causes of action for negligence and intentional infliction of emotional distress. We affirm the judgment and the order.[3]

## BACKGROUND

Johnson's complaint included causes of action against all defendants for intentional infliction of emotional distress and negligence, and against Ralphs and SOI for malicious prosecution.[4] The complaint alleged that in November 2008 Johnson purchased a tablecloth at a Ralphs store, but it was the wrong size. She spoke by phone with a store employee who told her the right size was available. Johnson went to the store to exchange the tablecloth. She went to the manager's area for assistance, and when nobody arrived she left the tablecloth there after removing it from a bag. Johnson then did some shopping, retrieved a tablecloth in the correct size, and went to the checkout stand. She asked the cashier to add firewood—which was kept outside the store—to her bill and paid for her purchases. She did not pay for the tablecloth because it was an exchange. When she left the store she picked up the firewood.

---

[1] When appropriate we refer to SOI, Robinson and Barraza collectively as SOI.

[2] Further statutory references are also to the Code of Civil Procedure unless otherwise specified.

[3] The trial court's rulings on the anti-SLAPP motions and Ralphs's demurrer are contained in one minute order dated July 16, 2010. An order on an anti-SLAPP motion is immediately appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).) Johnson purports to appeal the order on the demurrer; however, an order sustaining a demurrer is interlocutory and not appealable. The appeal must be taken from a resulting judgment of dismissal. In the interests of justice and to avoid delay, we deem the order on the demurrer as incorporating a judgment of dismissal and treat her notice of appeal as applying to the judgment. (*Conley v. Roman Catholic Archbishop* (2000) 85 Cal.App.4th 1126, 1130 [102 Cal.Rptr.2d 679].)

[4] The complaint also included a second cause of action for negligence and a cause of action for negligent infliction of emotional distress. These claims were disposed of and are not at issue on appeal.

At that time, Robinson and Barraza confronted Johnson and asked her to step back inside the store. They escorted her to an employee break room where Robinson berated Johnson in front of several Ralphs employees for stealing the tablecloth and firewood. Johnson tried to explain that she had asked the cashier to include the firewood in her purchase and the tablecloth was an exchange. Johnson asked Robinson and Barraza to go to the manager's area to confirm she had left a tablecloth there, or to get the manager, but they refused.

Robinson turned on a TV program that involved police officers arresting people, and he told Barraza that he had to make a "collar." Johnson was kept in the break room between one and a half and two hours, after which she was handcuffed and escorted through the store. As she was escorted out, Robinson yelled, "that's what you get," and "you're not welcome to shop here anymore." Ralphs and/or SOI instigated without probable cause and with malice a criminal prosecution against Johnson for shoplifting and the action terminated in her favor.

Ralphs and SOI brought special motions to strike the complaint under the anti-SLAPP statute. (§ 425.16.) The trial court granted the motions only as to the cause of action for malicious prosecution. Ralphs and SOI also separately demurred to the complaint. The trial court sustained the demurrers without leave to amend on the cause of action for intentional infliction of emotional distress. The trial court sustained Ralphs's demurrer to the cause of action for negligence, but it overruled SOI's demurrer to that claim. The ruling completely disposed of the action against Ralphs, and left only the negligence cause of action against SOI. The trial court subsequently awarded SOI $1,600 in attorney fees for partially prevailing under the anti-SLAPP statute.

DISCUSSION[5]

I

*Anti-SLAPP Motion*

A

In 1992 the Legislature enacted section 425.16, known as the anti-SLAPP statute, to allow a court to dismiss certain types of unmeritorious claims at an

---

[5] We reject SOI's assertion Johnson's appeal is untimely. The trial court's order/judgment is dated July 16, 2010, and Johnson filed her notice of appeal on September 29, 2010. For some reason, Johnson served a notice of entry of judgment on October 14, 2010. "An appeal must be made within 60 days after service of the notice of entry of judgment, or 180 days after entry of judgment." (*Moghaddam v. Bone* (2006) 142 Cal.App.4th 283, 288 [47 Cal.Rptr.3d 602]; see Cal. Rules of Court, rule 8.104(a).) SOI's assertion that the mere knowledge of the order/judgment on July 16, 2010, triggered the 60-day period is mistaken.

early stage in the litigation. (*Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146, 1159 [15 Cal.Rptr.3d 100].) Section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

■ In deciding an anti-SLAPP motion, the trial court must "engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

The trial court's ruling on a special motion to strike under section 425.16 is subject to our independent review. (*Annette F. v. Sharon S., supra,* 119 Cal.App.4th at p. 1159.)

B

Johnson contends the complaint's malicious prosecution cause of action does not arise from protected activity, and thus the anti-SLAPP statute is inapplicable. We conclude the contention lacks merit.

■ "The tort of malicious prosecution consists of instituting or instigating unjustifiable criminal or civil judicial proceedings . . . ." (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 750, p. 169 (Witkin).) "By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing [or instigating] a lawsuit." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 [3 Cal.Rptr.3d 636, 74 P.3d 737] (*Jarrow*).) The complaint must allege the "institution or instigation of the proceeding, e.g., the accusation of a crime resulting in a preliminary hearing before a magistrate or an indictment on the charge," a lack of probable cause, malice or other improper motive, and the favorable termination of the proceeding. (5 Witkin, *supra,* § 751, pp. 170–171.) Here, the cause of action for malicious prosecution alleges these criteria.

■ It is well established that the anti-SLAPP statute applies to malicious prosecution actions. (*Jarrow, supra,* 31 Cal.4th at pp. 735–741.) "In general, communications in connection with matters related to a lawsuit are privileged under Civil Code section 47, subdivision (b). [Citations.] Communications ' "within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . are equally entitled to the benefits of [Code of Civil Procedure] section 425.16." ' " (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1058 [18 Cal.Rptr.3d 882].) "Under the 'usual formulation,' the litigation 'privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.] This includes prelitigation communications involving the subject matter of the ultimate litigation." (*Ibid.*) A report to police of a suspected crime falls within the litigation privilege. (*Wang v. Hartunian* (2003) 111 Cal.App.4th 744, 749 [3 Cal.Rptr.3d 909] (*Wang*).)

In opposition to the anti-SLAPP motions, Johnson stated in a declaration that Robinson "told [me] he was placing me under citizens' arrest." Johnson cited *Wang, supra,* 111 Cal.App.4th 744, which held that a complaint for false arrest was not subject to the anti-SLAPP statute. The opinion explained "the line between [protected] communication and [unprotected] conduct was crossed when Hartunian [made a citizen's arrest on] Wang and caused the police officers to take Wang into custody." (*Wang, supra,* at pp. 751–752.)

As the trial court noted here, however, the complaint does not include a false arrest cause of action. The torts of malicious prosecution and false arrest are not interchangeable. False arrest is a species of false imprisonment. (*Levin v. United Air Lines, Inc.* (2008) 158 Cal.App.4th 1002, 1016, fn. 16 [70 Cal.Rptr.3d 535].) "The tort of false imprisonment consists of unlawful restraint or confinement, and the cause of action arises immediately on the commission of the wrongful act. The pleading requirements are *quite different from those in malicious prosecution actions.* The plaintiff need not allege favorable termination of a criminal prosecution, lack of probable cause, or malice." (5 Witkin, *supra,* § 763, pp. 179–180, italics added.) The record does not suggest, and Johnson does not assert, that she made any attempt to amend her complaint to add a cause of action for false arrest. Even if she had, however, the malicious prosecution cause of action was subject to the anti-SLAPP statute.[6]

_____

[6] In *Wang, supra,* 111 Cal.App.4th 744, the complaint included causes of action for false arrest/imprisonment, intentional infliction of emotional distress, abuse of process and malicious prosecution, all arising from a citizen's arrest. (*Id.* at pp. 746–747.) It does not appear that the alleged conduct in *Wang* would satisfy the elements of a malicious prosecution claim, as there was no hearing before a magistrate or indictment. Rather, the plaintiff posted a $500 bail and

Johnson's reliance on *Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858 [90 Cal.Rptr.3d 205] (*Nguyen-Lam*), is misplaced. In *Nguyen-Lam*, there was no dispute that a complaint for slander arose from protected activity within the meaning of section 425.16. Parol evidence submitted at the hearing demonstrated a probability the plaintiff would prevail in establishing the defendant slandered her with actual malice. The complaint did not allege the requisite element of actual malice, and the trial court allowed the plaintiff to amend the complaint to add the allegation, effectively denying the defendant's anti-SLAPP motion. The Court of Appeal affirmed the allowance of an amendment. *Nguyen-Lam* does not concern the situation here, where Johnson's parol evidence pertains to an entirely different cause of action (false arrest) than that attacked in the anti-SLAPP motions (malicious prosecution). An anti-SLAPP motion is, of course, directed to the complaint allegations. We find no error.

## C

Alternatively, Johnson contends the trial court erred by finding she did not meet her burden of showing a probability of prevailing on the merits of the malicious prosecution cause of action. We also disagree with this contention.

■ "[T]o establish a probability of prevailing on the claim [citation], a plaintiff responding to an anti-SLAPP motion must ' "state[] and substantiate[] a legally sufficient claim." ' [Citation.] Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].)

■ Johnson was required to show defendants lacked probable cause to suspect her of shoplifting. "When, as here, the claim of malicious prosecution is based upon initiation of a criminal prosecution, the question of probable cause is whether it was objectively reasonable for the defendant . . . to

---

was released from custody with no further action taken against him. (*Id.* at pp. 746, 751.) It appears the court essentially treated the entire complaint as one for false arrest for purposes of the anti-SLAPP statute. We do not read *Wang* to vary the traditional elements of a malicious prosecution cause of action.

suspect the plaintiff . . . had committed a crime." (*Ecker v. Raging Waters Group, Inc.* (2001) 87 Cal.App.4th 1320, 1330 [105 Cal.Rptr.2d 320].)

██ Johnson did not meet her burden. She produced no written receipt showing her prior purchase of a tablecloth, exchange of the tablecloth, or payment for the firewood. Her declaration states Robinson went with her to the cashier stand where she made her purchases, and when asked about the transaction "the cashier giggled and stated 'I don't remember, it's really busy in here.' " Objectively, the circumstances raise a reasonable suspicion of shoplifting. Johnson actually concedes defendants "may have had probable cause for initially placing [her] under arrest in connection with the incident at the store."

Johnson complains, however, that it took the police between one and a half and two hours to appear at the Ralphs store. That issue, however, does not pertain to defendants' probable cause. She also complains that during the wait, Robinson and Barraza did not conduct any further investigation that might have exonerated her. She asserts they should have viewed store videos that might have shown her leaving a tablecloth at the manager's area. "That argument misses the mark. Whether the malicious prosecution defendant conducted a sufficient or adequate investigation is legally irrelevant to the probable cause determination." (*Ecker v. Raging Waters Group, Inc., supra*, 87 Cal.App.4th at p. 1331.) Further, regardless of the situation with the tablecloth, there is no indication further investigation would have shown she paid for the firewood. She had no receipt and the cashier did not recall the incident.

## II

### *Ralphs's Demurrer*

### A

Additionally, Johnson contends the trial court erred by sustaining Ralphs's demurrer to the cause of action for negligence. She asserts Ralphs is liable for the negligence of SOI's employees on the ground of vicarious liability.

A demurrer "tests the legal sufficiency of factual allegations in a complaint." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42 [96 Cal.Rptr.2d 354].) In reviewing a demurrer ruling, this court exercises independent judgment in determining whether the complaint's factual allegations sufficiently state a cause of action. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].) We treat the

demurrer " 'as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Johnson relies on two opinions, *Noble v. Sears, Roebuck & Co.* (1973) 33 Cal.App.3d 654 [109 Cal.Rptr. 269] (*Noble*), and *Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736 [66 Cal.Rptr.3d 268] (*Slesinger*). *Noble* states "it appears that in California the hirer of a detective agency for either a single investigation or for the protection of property, may be liable for the *intentional* torts of employees of the private detective agency committed in the course of employment." (*Noble, supra,* at p. 663, italics added.) Likewise, *Slesinger* acknowledges that "a litigant is vicariously liable for its investigator's *intentional* misconduct committed within the course and scope of employment." (*Slesinger, supra,* at p. 769, italics added.)

■ Johnson admits she has found no authority for the proposition that the hirer of an independent security agency is liable for the *negligence* of the agency's employees. That is not surprising since "[a]t common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work. [Citations.] Central to this rule of nonliability was the recognition that a person who hired an independent contractor had ' "no right of control as to the mode of doing the work contracted for." ' " (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 693 [21 Cal.Rptr.2d 72, 854 P.2d 721].) *Noble*, which Johnson cites, explains that the hirer of an independent security agency is generally not liable for the *negligent* torts of agency personnel "where the hirer did not exercise control over them." (*Noble, supra,* 33 Cal.App.3d at p. 661.)

The general rule of nonliability is subject to numerous exceptions, such as the nondelegable duty and peculiar risk doctrines. (See, e.g., *SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 601 [129 Cal.Rptr.3d 601, 258 P.3d 737]; *Privette v. Superior Court, supra,* 5 Cal.4th at p. 694.) The negligence cause of action here, however, alleges no such exception. Accordingly, we find no error.

B

1

Johnson also submits the trial court erred by sustaining Ralphs's demurrer to the cause of action for intentional infliction of emotional distress. Again, we disagree.

 " 'Peace of mind is now recognized as a legally protected interest, the intentional invasion of which is an independent wrong, giving rise to liability without the necessity of showing the elements of any of the traditional torts.' [Citation.] '[T]o state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' [Citation.] 'Conduct, to be " 'outrageous' " must be so extreme as to exceed all bounds of that usually tolerated in a civilized society.' " (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1259 [29 Cal.Rptr.3d 521]; see *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209–210 [185 Cal.Rptr. 252, 649 P.2d 894].) The issue may be resolved as a matter of law on the alleged facts. (*Davidson v. City of Westminster, supra*, at p. 210.)

The court sustained the demurrer on the ground the "conduct is not extreme and outrageous." Ralphs's only involvement was hiring SOI as an independent contractor for security. Moreover, to any extent Ralphs could arguably be liable for the intentional conduct of SOI's employees, they had probable cause to suspect Johnson of shoplifting and detain her. The Penal Code provides that a "merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises." (Pen. Code, § 490.5, subd. (f)(1).) "In any civil action brought by any person resulting from a detention or arrest by a merchant, it shall be a defense to such action that the merchant detaining or arresting such person had probable cause to believe that the person had stolen or attempted to steal merchandise and that the merchant acted reasonably under all the circumstances." (Pen. Code, § 490.5, subd. (f)(7).) Johnson concedes she has no quarrel with her initial detention.

We agree with the trial court's assessment that Robinson's comment while watching a TV show in the employee break room that he needed to make a "collar," and his comments to Johnson as she was escorted out of the store, "that's what you get" and "you're not welcome to shop here anymore," are insufficient as a matter of law. " 'Ordinarily mere insulting language, without more, does not constitute outrageous conduct. The Restatement view is that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities . . . . There is no occasion for the law to

intervene . . . where some one's feelings are hurt." (Rest.2d Torts, § 46, com. d.)' " (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 946 [160 Cal.Rptr. 141, 603 P.2d 58], overruled on another point in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4 [88 Cal.Rptr.2d 19, 981 P.2d 944].) " 'The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.' " (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496 [76 Cal.Rptr.2d 540], quoting Rest.2d Torts, § 46, com. d, p. 73.)

2

The opinions Johnson cites are unavailing. For instance, *Christensen v. Superior Court* (1991) 54 Cal.3d 868 [2 Cal.Rptr.2d 79, 820 P.2d 181], was a proposed class action in which decedents' relatives sued mortuaries and crematories for the negligent and intentional mishandling of decedents' remains by selling organs and comingling and mutilating remains. The issue on appeal was whether the relatives had standing to recover damages for emotional distress caused by having knowledge of the mishandling. The court held that some relatives had standing to pursue damages for negligent infliction of emotional distress. (*Id.* at p. 875.) As to the intentional infliction theory, however, the court found a lack of standing based on the allegations of a model complaint. The court explained, "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." (*Id.* at p. 903.)

In *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 863, 875 [104 Cal.Rptr.3d 352], highway patrolmen posted photos of the decapitated remains of an 18-year-old traffic accident victim on the Internet. The photos were "strewn about the Internet and spit back at the family members, accompanied by hateful messages." (*Id.* at p. 863; see *Agarwal v. Johnson, supra*, 25 Cal.3d at pp. 941, 947 [substantial evidence supported finding supervisory employee's use of racial epithets ["[y]ou black n—r, member of an inferior race"] against another employee was outrageous and intended to inflict emotional distress]; *Arcaro v. Silva & Silva Enterprises Corp.* (1999) 77 Cal.App.4th 152 [91 Cal.Rptr.2d 433] [contrary to Johnson's assertion, the opinion does not pertain to emotional distress].) Johnson's reply brief states she "readily concedes that the factual situations in those cases are completely different from the facts of this case." If anything, these opinions confirm the propriety of the court's ruling.

## DISPOSITION

The judgment and order are affirmed. Defendants are entitled to costs on appeal.

Benke, J., and McIntyre, J., concurred.