Filed 3/29/22  Disieno v. Nohr CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| JULIA DISIENO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MARY NOHR et al.,<br><br>    Defendants and Respondents. | 2d Civ. No. B311576<br>(Super. Ct. No. 20CV02397)<br>(Santa Barbara County) |

Appellant Julia DiSieno operated a non-profit animal rescue facility out of her backyard in Solvang.  A series of heated confrontations with neighbors over the facility resulted in the District Attorney filing criminal charges against DiSieno for stalking, criminal threats, and assault and battery.  A jury acquitted her of the charges.  This matter arises from DiSieno's subsequent civil action against neighbors Mary Nohr, Richard Nohr, and Jay Bardessono for malicious prosecution and other claims based on allegations they provided false information to law enforcement about DiSieno's behavior.

DiSieno appeals the trial court's dismissal of her malicious prosecution cause of action as a strategic lawsuit against public participation ("SLAPP"). (Code Civ. Proc., § 425.16.)[1] We disagree in part with the court's analysis but reach the same result. The order is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

DiSieno and the Nohrs live next to each other in a semi-rural neighborhood east of Solvang, California. DiSieno began operating a licensed rescue facility on her property in 2009 that housed wild animals such as coyotes, bobcats, foxes, and owls, as well as domestic cats and dogs. The relationship between the neighbors was tense from the start. DiSieno came to believe the Nohrs were trying to close the facility by falsely reporting zoning violations and "petty . . . activities and conditions on [her] property" like barking dogs. The Nohrs felt they could no longer spend time in their garden or entertain outside because of the noise and odor from DiSieno's yard.

The dispute escalated in March of 2017 when DiSieno yelled profanities at the Nohrs as they checked their mailbox. In the following months, the Nohrs heard what they believed to be rocks hitting their house coming from the direction of DiSieno's property followed by yelling and banging on the boundary fence. The Nohrs installed a security camera in the side yard that captured DiSieno throwing rocks against the boundary fence and making lengthy, profanity-laced tirades in which she baited the Nohrs about the noise and their complaints to police. The Nohrs sent police a recording in which they allegedly heard her say "you're going down" and then make machine gun noises. DiSieno

_____

[1] We cite the Code of Civil Procedure unless noted otherwise.

2

explained she was talking to her dogs about "going down" to be fed; she identified the gun noises as the gobbling of her resident turkey.

DiSieno blamed another neighbor, Jay Bardessono, for making similar complaints about the conditions on her property. Another confrontation occurred in March of 2018 when Bardessono allegedly "flipped off" DiSieno with both hands as he drove past her house. She followed him in her truck to nearby El Rancho Market so she could ask him why he was harassing her. She pulled up next to him and saw his dog leap out of the car and start running down an alley next to the market. Bardessano got out, caught the dog, and began walking back toward the cars. As he approached DiSieno's driver side window, she gunned the accelerator. Bardessono claimed the truck clipped his shoulder as it sped past. A short time later Police interviewed him and market employees about the incident but were unable to reach DiSieno.

The District Attorney charged DiSieno with misdemeanor stalking and criminal threats based on her alleged behavior towards the Nohrs. She was later charged with battery and assault with a deadly weapon in connection with the El Rancho Market incident. A jury acquitted DiSieno of these charges in June of 2018. A year later she filed a civil complaint against the Nohrs and Bardessono for malicious prosecution, invasion of privacy, and both intentional and negligent infliction of emotional distress. DiSieno's verified first amended complaint contained causes of action for: (1) malicious prosecution (all defendants); (2) invasion of privacy – eavesdropping (Nohr defendants only, based on their use of a security camera); (3) invasion of privacy – public disclosure of private facts (all defendants, based on Facebooks posts about DiSieno); (4) intentional infliction of emotional

3

distress (all defendants); and (5) negligent infliction of emotional distress (all defendants).  She also alleged they conspired to make false accusations to law enforcement as a way to harm or interfere with her animal rescue operation.  Her acquittal, she alleged, constituted a favorable and final termination of the four charges arising from the accusations.  She sought damages as well as attorney's fees incurred defending the case.

The Nohrs and Bardessono moved to dismiss DiSieno's cause of action for malicious prosecution pursuant to the Anti-SLAPP statutes.  The trial court granted both motions.  DiSieno appeals the ruling.  The remaining causes are not the subject of this appeal.

DISCUSSION

### A. Anti-SLAPP Motions

"A SLAPP suit has been described as 'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.'" (*Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 672.)  Such suits are subject to a special motion to strike, i.e., an anti-SLAPP motion.  (§ 425.16, subd. (b)(1).)  The moving party must first show the challenged claim arises from an act in furtherance of their right of petition or free speech in connection with a public issue.  (*Olive Properties, L.P. v. Coolwaters Enterprises, Inc.* (2015) 241 Cal.App.4th 1169, 1174.)  If the moving party meets this threshold, the complaining party must then establish a probability of prevailing on the claim.  (*Ibid.*)

DiSieno concedes respondents' reports to police were made "in furtherance of the . . . right of petition or free speech . . . in connection with a public issue." (§ 425.16, subd. (b)(1).)  Our analysis thus focuses on the second prong of the anti-SLAPP analysis, i.e., the probability she will prevail on her malicious prosecution claim.  We "accept as true all evidence favorable to

4

the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) She need only show a "minimum level of legal sufficiency and triability." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5; see *Navellier v. Sletten* (2002) 29 Cal.4th 82, 93 [anti-SLAPP statute "poses no obstacle to suits that possess [even] minimal merit"].)

### B. Trial Court's Finding that DiSieno Would Not Prevail on Her Malicious Prosecution Claim

Reports to police about suspected criminal activity are considered privileged pre-litigation communications under Civil Code section 47(b), even if false. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 364; *Johnson v. Ralphs Grocery Co.* (2012) 204 Cal.App.4th 1097, 1104.)[2] The only remedy available to a party aggrieved by an allegedly false police report is to file a file a civil action for malicious prosecution against the reporting party. (*Hagberg*, at p. 361; see *Cox v. Griffin* (2019) 34 Cal.App.5th 440, 449 [reports "designed to instigate or prompt an investigation, can only be the basis for tort liability if the plaintiff can establish the tort of malicious prosecution"].) This requires

---

[2] The Legislature recently amended section 47 to exclude knowingly false police reports, as well as those made "with reckless disregard" for their truth or falsity, from those types of communications considered privileged. (Civil Code, § 47, subd. (b)(5).) This appeal concerns communications made prior to the amendment's effective date of January 1, 2021. We apply the law as it existed at the time of the alleged tort. (See *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207 ["'[it] is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent'"].)

the plaintiff to prove the criminal case was: (1) commenced by or at the direction of the defendant and terminated in plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.) The absence of just one element disposes of the claim. (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1481 (*Zucchet*).)

The trial court granted respondents' anti-SLAPP after finding DiSieno failed to prove: (a) her prosecution was commenced at the direction of respondents; and (b) the charges were brought without probable cause.[3] We review these findings *de novo* and reverse. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) In doing so, we part ways with the trial court on the first finding but concur on the second.

### C. Whether the Criminal Case Was Commenced at the Direction of Respondents

The district attorney, not respondents, decided to charge DiSieno. Establishing their civil liability for this decision requires DiSieno to show they were """"actively instrumental in causing the prosecution."""" (*Zucchet*, *supra*, 229 Cal.App.4th at pp. 1481-1482.) Respondents must have "'presse[d] the police to apply for a complaint or take[n] some affirmative action to encourage the prosecution by way of advice or pressure, as opposed to merely providing information'" to law enforcement. (*Id.* at p. 1483, quoting 52 Am.Jur.2d (2011) Malicious Prosecution, Caution, foll. § 23, p. 209, italics omitted.) We assess whether the evidence before the trial court, taken as true,

---

[3] Respondents conceded below that DiSieno's acquittal satisfied the "favorable termination" element of DiSieno's malicious prosecution claim. We need not address the issue on appeal.

6

established the respondents encouraged law enforcement and prosecutors in this manner.

The parties' affidavits present conflicting accounts of the events leading up to DiSieno's prosecution. Respondents describe doing no more than candidly reporting a neighbor's erratic and threatening behaviors to police. DiSieno denies their accounts and asserts they campaigned for her prosecution by peppering law enforcement with lies. We need not resolve or reconcile these divergent stories. The undisputed portions of these affidavits establish the Nohrs telephoned law enforcement several times about DiSieno during the period of March 2017 and October 2017. The last of these calls, and, specifically, their providing security camera footage, prompted the District Attorney to file charges. Bardessono's report of the El Rancho Market incident likewise initiated an investigation and resulted in additional charges against DiSieno.

We distinguish *Zucchet* where defendant provided allegedly false information to police and prosecutors during an ongoing corruption investigation of a city councilmember. The Nohrs and Bardessono were not approached by police during an existing investigation, nor were they simply evidentiary components of a broader case against DiSieno. It was they who initiated the investigations by reporting their neighbor's threatening behaviors and statements at the outset. The information and evidence respondents provided to police, regardless of truth or falsity, was the impetus for the criminal charges later brought against DiSieno. The record therefore confirms they were "active instruments" in causing her prosecution.

*D. Whether DiSieno Established a Lack of Probable Cause*

Respondents' active role in causing DiSieno's prosecution was actionable only if the criminal charges were brought without

7

probable cause. Here again the undisputed evidence guides our analysis. The Nohrs attested to providing police with security camera media containing, among other things, footage of DiSieno throwing rocks at her boundary fence, ranting profanely about Mary Nohr, and goading her to "[c]all the police" and "[c]all 911." DiSieno did not dispute the authenticity of these materials or deny prosecutors pursued charges against her based in whole or in part because of them. Similarly unchallenged are key parts of Bardessono's account of the El Rancho Market in which he described DiSieno following him in her car from her home to the market; parking next to him; and accelerating past him close enough for him to be struck by her side mirror (his version) or for him to hit the side of her truck with his hand (her version). The police report attached to his declaration reveals the investigating officer's review of video footage and witness interviews corroborated Bardessono's account.

DiSieno's contrary account of the events giving rise to her prosecution, even if assumed true, does not demonstrate the charges against her were brought without probable cause when considered in conjunction with the very troubling evidence presented to prosecutors by respondents and the police. (See Penal Code, §872, subd. (a) [criminal defendant held to answer for charges at preliminary hearing if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty"]; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 251 [sufficient cause exists where "a reasonable person could harbor a strong suspicion of the defendant's guilt"].) Having found DiSieno did not establish this second element of malicious prosecution, we conclude she could not prevail on that claim. The trial court properly granted the anti-SLAPP motion.

8

DISPOSITION

The order granting the anti-SLAPP motion is affirmed.
Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P.J.

YEGAN, J.

9

James F. Rigali, Judge
Superior Court County of Santa Barbara

_____

Tardiff Law Offices, Neil S. Tardiff, for Plaintiff and Appellant.

MacDonald & Cody, Gregory J. Bramlage; Trusted Legal, Naomi R. Dewey, for Defendants and Respondents Mary Nohr and Richard Nohr.

Henderson & Borgeson, David Tedesco and Jay Borgeson; Trusted Legal, Naomi R. Dewey, for Defendant and Respondent Jay Bardessono.