Filed 5/15/26  Dingizian v. Cruz CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| SHAWNT DINGIZIAN et al., | B343190 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 224STCV10161) |
| v. | |
| ROBERT G. CRUZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lynne M. Hobbs, Judge.  Affirmed.

Robert G. Cruz, in pro. per., for Defendant and Appellant.

Grant Shenon Almaraz, David M. Almaraz and Nicholas Koo, for Plaintiffs and Respondents.

————————————

# INTRODUCTION

Appellant Robert Cruz and respondents Shawnt and Gassia Dingizian (the Dingizians) are neighbors involved in an easement dispute. The Dingizians filed a complaint against Cruz, and Cruz filed a cross-complaint against the Dingizians in the underlying civil action. The Dingizians filed a special motion to strike certain claims in Cruz's cross-complaint under Code of Civil Procedure section 425.16, which the trial court granted.[1] The court left intact Cruz's claims based on unprotected activity, and did not strike any causes of action in full.[2] We affirm because the stricken allegations relate to protected litigation activity, and Cruz has not met his burden of demonstrating a probability of success on the merits of the stricken claims by overcoming the litigation privilege.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Complaint and Cross-Complaint*

Cruz and the Dingizians own homes adjacent to each other in Pasadena. The properties have a shared easement for ingress and egress that straddles the property line. In April 2024, the Dingizians filed a complaint against Cruz for breach of easement,

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

[2]    We "refer to the proper subject of a special motion to strike as a 'claim,' a term that also appears in section 425.16[, subdivision] (b)(1)," as well as "sometimes use 'cause of action' in its ordinary sense, to mean a count as pleaded." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 382.)

2

negligent maintenance, nuisance, trespass to chattel, breach of the covenant of quiet enjoyment, interference with secondary easement, and declaratory relief.

In May 2024, Cruz filed a cross-complaint against the Dingizians in propria persona, alleging causes of action for (1) "Illegal Installation of Obstructions on Established Easement to Prevent Lawful Access for Ingress and Egress"; (2) interference with sale of property; (3) "Intentional Destruction of Required Road Material for Fire Department Vehicles"; (4) intentional infliction of emotional distress; (5) trespass; (6) breach of the covenant of quiet enjoyment; and (7) declaratory relief.

B.    *Anti-SLAPP Motion*

On July 24, 2024, the Dingizians filed a special motion to strike portions of Cruz's cross-complaint under section 425.16 (anti-SLAPP motion). The Dingizians sought to strike only those claims based on allegations relating to the filing of their complaint, as well as prelitigation negotiations and communication, which Cruz described in his cross-complaint as litigation threats. The Dingizians did not move to strike any causes of action in the cross-complaint.

The Dingizians argued the challenged allegations arose from protected petitioning activity and that the litigation privilege applied (Civ. Code, § 47, subd. (b)). They also argued Cruz could not establish a probability of success on the merits of his causes of action for illegal installation, interference with the sale of property, intentional infliction of emotional distress, and breach of quiet enjoyment based on these allegations. The motion attached the declarations of Shawnt Dingizian and the Dingizians' attorney, Nicholas Koo, who attested the

3

communications alleged in the cross-complaint took place in 2021 through the parties' legal counsel, and in late 2023, between the Dingizians' counsel and Cruz, who was unrepresented at that time. The declarations stated that in late 2023, the Dingizians offered to dissolve the easement in exchange for a waiver of all claims against Cruz.

Cruz opposed, arguing through counsel that the challenged allegations were "context" rather than a basis for any of his claims. He also argued that, although certain allegations could be construed as prelitigation statements, the litigation privilege did not apply to the 2021 communications because the Dingizians could not have reasonably believed they had a viable litigation claim at that time. Cruz filed a declaration attaching various property records from the Los Angeles County Recorder's Office and attesting to his ownership of his parcel, but presented no other evidence.

The Dingizians' reply argued Cruz's allegations of legal threats directly supported elements of his causes of action and to show his damages, and thus were "not just alleged to provide context;" their motion merely sought to strike the allegations Cruz characterized as "legal threats," rather than his entire complaint or any causes of action; and Cruz could not show any probability of success on the challenged claims because they were based on activities protected by the litigation privilege.

On October 15, 2024, the court held a hearing on the anti-SLAPP motion and granted the motion "as to the allegations identified in [the Dingizians'] motion." The court concluded the Dingizians met their burden of demonstrating that the challenged claims arose from allegations of protected activity, specifically prelitigation settlement negotiations preceding the

filing of a civil action.  The court determined the Dingizians "presented evidence that these 'threats' were efforts at prelitigation negotiation to resolve the easement dispute and potentially waive the claims now asserted in this matter. . . . These claims were made in judicial proceedings, by litigants, to achieve the objects of the litigation, and were connected to the action."  The court stated the allegations at issue were more than "mere context," noting Cruz argued the Dingizians' "prelitigation negotiations constituted a violation of the covenant of good faith and fair dealing, outrageous conduct for the purposes of inflicting severe emotional distress, acts designed to interfere with Defendant's sale of the property, and violations of the covenant of quiet enjoyment," evidencing "a clear intent to impose liability upon [the Dingizians] for, among other things, their litigation-related conduct."  Thus, the court could address Cruz's "claims for relief based on [the Dingizians'] threats of litigation," "even though [Cruz] assert[ed] other, non-protected conduct" in the same counts.

On the second prong of the anti-SLAPP analysis, the trial court concluded that Cruz's claims arising from protected activity were barred by the litigation privilege and that Cruz "fail[ed] to offer any evidence to substantiate any elements of his claims" arising from protected activity.  Thus, Cruz had not established a probability of prevailing on the merits of those claims.  The court also awarded the Dingizians attorney fees of $12,900.

The court did not fully strike any of the causes of action in the cross-complaint.  Instead, the court ordered stricken the following portions of Cruz's cross-complaint:

5

In the "General Facts" section of Cruz's cross-complaint:

- "Demand for Easement Agreement:  The Plaintiffs' attorneys communicated with the Defendant, demanding that the Defendant enter into an easement agreement favoring the Plaintiffs under the threat of filing a frivolous lawsuit for nonexistent damages[.]" (Stricken in full.)
- "Lawsuit for Breach of Easement:  The Plaintiffs had their attorneys file a Superior Court case, accusing the Defendant of breaching the easement[.]" (Stricken in full.)

In the first cause of action for obstruction of easement:

- "Good Faith and Fair Dealing:  Failure to Negotiate in Good Faith:  Plaintiffs' refusal to negotiate the removal of obstructions, coupled with the threat of frivolous litigation, demonstrates a lack of good faith and fair dealing.  Plaintiffs' actions were intended to coerce the Defendant into an unfavorable easement agreement, thereby abusing legal processes." (Stricken in full.)
- "Conclusion:  Plaintiffs' actions constitute a clear and ongoing violation of the Defendant's easement rights, local codes, *and principles of good faith and fair dealing*."  (Emphasized language stricken.)

In the second cause of action for interference with sale of property:

- "Plaintiffs' Intentional Actions:  Plaintiffs' intentional installation of obstructions *and threats of frivolous*

6

*litigation* were designed to coerce the Defendant and interfere with his property rights, including the sale of the property." (Emphasized language stricken.)

In the fourth cause of action for intentional infliction of emotional distress:

- "Threats of Frivolous Litigation: Plaintiffs' legal threats to coerce the Defendant into an unfavorable easement agreement under the threat of a frivolous lawsuit further exemplify Plaintiffs' malicious intent and outrageous conduct." (Stricken in full.)
- "Mental and Emotional Impact: Plaintiffs' actions have caused significant mental and emotional distress to the Defendant. The continued obstruction of the easement, destruction of property, *and ongoing legal threats* have created a pervasive sense of anxiety and helplessness for the Defendant." (Emphasized language stricken.)
- "Direct Result of Plaintiffs' Actions: The emotional distress suffered by the Defendant is a direct result of the Plaintiffs' intentional and malicious actions. The ongoing obstruction, destruction of property, *and threats* have created a continuous and pervasive impact on the Defendant's mental well-being." (Emphasized language stricken.)
- "Conclusion: Plaintiffs' actions constitute a clear and intentional infliction of emotional distress upon the Defendant. The deliberate obstruction of the easement, destruction of property, *and threats of frivolous litigation* have caused significant emotional

7

and psychological harm." (Emphasized language stricken.)

In the sixth cause of action for breach of the covenant of quiet enjoyment:
- "Legal Threats and Coercion: Plaintiffs' threats of frivolous litigation were designed to intimidate Defendant and force an unfavorable easement agreement, further interfering with Defendant's quiet enjoyment." (Stricken in full.)
- "Conclusion:  Plaintiffs' actions constitute a clear breach of the covenant of quiet enjoyment.  The unauthorized installation of obstructions, destruction of property, *and legal threats* have significantly interfered with Defendant's lawful use and enjoyment of the Defendant's Property." (Emphasized language stricken.)

Cruz timely appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*

Under section 425.16, commonly known as the anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition . . . shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1); see *Rand Resources, LLC v. City of Carson* (2019)

8

6 Cal.5th 610, 619-620 ["[a] court may strike a cause of action only if the cause of action (1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claim"].)

A special motion to strike may also "operate against a so-called 'mixed cause of action' that combines allegations of activity protected by the statute with allegations of unprotected activity," as here. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381-382 (*Baral*) ["cause of action" under the anti-SLAPP statute is not limited to entire causes of action, but also encompasses "claims that are based on the conduct protected by the statute" in mixed causes of action].) In such cases, "an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded," with only the defective portion of the cause of action stricken. (*Id.* at p. 393.)

Pursuant to section 425.16, subdivision (e), an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of

9

free speech in connection with a public issue or an issue of public interest."

In ruling on an anti-SLAPP motion, the court engages in a two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral, supra,* 1 Cal.5th at p. 384, accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*); *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) " ' "If the plaintiff fails to do so, the motion to strike is granted and the prevailing defendant is entitled to recover his or her attorney fees and costs. (§ 425.16, subd. (c).)" ' " (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 404.) Only a claim "that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, italics omitted; see *Baral,* at p. 396 ["claims for relief that are based on allegations of protected activity" may be stricken individually if they lack merit].)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062.) Thus, "[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability

10

is asserted.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); see *Bonni, supra,* 11 Cal.5th at p. 1009 ["[t]he defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity"]; *Park*, at p. 1060.)  "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' " (*Wilson*, at p. 884; accord, *Park*, at p. 1063.)

" 'If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute.' " (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 594 (*Area 51*); see *Baral, supra,* 1 Cal.5th at pp. 393-394 ["Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute"].)

"As to the second step inquiry, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940; accord, *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) " 'We have described this second step as a "summary-judgment-like procedure."  [Citation.]  The court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to

11

sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.' " (*Monster Energy*, at p. 788; see *Taus v. Loftus* (2007) 40 Cal.4th 683, 714 (*Taus*) [the court should grant the section 425.16 motion " 'if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim' "].)  "[I]n cases involving allegations of both protected and unprotected activity, the plaintiff is required to establish a probability of prevailing on any claim for relief based on allegations of protected activity." (*Baral, supra,* 1 Cal.5th at p. 395.)

We review an order granting an anti-SLAPP motion de novo.  (*Park, supra,* 2 Cal.5th at p. 1067.)

B.     *The Stricken Claims Arose from the Dingizians' Protected Petitioning Activity*

We first consider whether the stricken claims against the Dingizians "arise[] from any act . . . in furtherance of the[ir] . . . right of petition."  (§ 425.16, subd. (b)(1).)  An " 'act in furtherance of a person's right of petition' . . . includes: (1) any written or oral statement or writing made before a . . . judicial proceeding . . . , [or] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body."  (§ 425.16, subd. (e).)  " 'A cause of action "arising from" defendant's litigation activity' " falls within those categories.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)  Protected acts "include[] communicative conduct such as the filing, funding, and prosecution of a civil action."  (*Ibid.*)

12

The stricken claims alleged the Dingizians threatened litigation if Cruz did not agree to their proposed resolution of the easement dispute, and that these allegations supported his causes of action. Specifically, Cruz alleged violations and harm arising from the Dingizians' litigation threats in four of his causes of action. In the first cause of action for obstruction of easement, Cruz alleged their "refusal to negotiate the removal of obstructions, coupled with the threat of frivolous litigation," violated principles of good faith and fair dealing. In the second cause of action for interference with sale of property, Cruz alleged the Dingizians' "*threats of frivolous litigation* were designed to coerce [Cruz] and interfere with his property rights, including the sale of the property." In the fourth cause of action for intentional infliction of emotional distress, Cruz alleged the Dingizians' "legal threats" exemplified their "malicious intent and outrageous conduct" and caused him significant emotional distress. And in the sixth cause of action for breach of the covenant of quiet enjoyment, Cruz alleged the Dingizians' "threats of frivolous litigation were designed to intimidate Defendant and force an unfavorable easement agreement, further interfering with [Cruz's] quiet enjoyment" and lawful use of his property.

We conclude the Dingizians' alleged litigation threats are the wrong complained of and are not simply "evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra,* 2 Cal.5th at p. 1060.) Such prelitigation communications are deemed protected petitioning activity because they are statements or writings made in connection with an issue pending in a judicial proceeding within the meaning of section 425.16, subdivision (e)(2). (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322, fn. 11 (*Flatley*) [" ' "communications

13

preparatory or in anticipation of bringing an action or other official proceeding" ' " are protected by section 425.16]; *Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 472 ["Correspondence 'made "in anticipation of litigation 'contemplated in good faith and under serious consideration' " ' can be a petitioning activity protected by the anti-SLAPP statute"].)  As alleged by Cruz, the Dingizians' communications all involved their threat to bring a lawsuit if he did not accept an "unfavorable easement agreement."  This protected activity "underlies or forms [a] basis for" his identified causes of action as pled, thus the cross-complaint contains claims arising from protected activity.  (*Park,* at pp. 1062-1063.)  The Dingizians satisfied the first prong of the anti-SLAPP analysis.

Cruz raises no claim of error as to any specific stricken allegation.  Rather, he argues his claims are based on "unprotected, tortious conduct" involving "physical obstruction and harassment" by the Dingizians, not constitutionally protected petitioning activity.  And, that even if portions of the complaint refer to the Dingizians' litigation activity, such references are "incidental."  Cruz appears to believe that the trial court "struck the Cross-Complaint in its entirety."  But as stated, the trial court did not strike any causes of action in their entirety, and it considered only those allegations relating to the Dingizians' protected petitioning activity.  Courts may strike only claims arising from allegations of protected activity in causes of action that have mixed bases.  (See *Baral, supra,* 1 Cal.5th at p. 393.)  "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at [the first] stage."  (*Id.* at p. 396.)  This allows courts to "rule on plaintiffs' specific claims of protected activity,

14

rather than reward artful pleading by ignoring such claims if they are mixed with assertions of unprotected activity." (*Id.* at p. 393.)  The court followed that procedure here:  it focused on the factual allegations of protected activity in the cross-complaint, and determined that Cruz sought relief based on those allegations.  Cruz is not barred from proceeding on his claims based on unprotected activity.

C.      *Cruz Did Not Demonstrate a Probability of Success on the Merits*

Because the Dingizians met their initial burden of showing that Cruz's claims arose from protected activity, the burden shifted to Cruz to "demonstrate that [his claims are] both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 476, italics and quotation marks omitted; accord, *Taus*, *supra*, 40 Cal.4th at pp. 714-715.)  In determining whether Cruz met his burden, we consider "the pleadings[] and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)  We do not, however, "weigh [defendant's] evidence against the plaintiff's, in terms of either credibility or persuasiveness.  Rather, the defendant's evidence is considered with a view toward whether it defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element." (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585; accord, *Taus,* at pp. 714-715.)

Here, the trial court correctly concluded Cruz's claims against the Dingizians arising from protected activity are barred by the litigation privilege codified in Civil Code section 47, subdivision (b).  "[T]he privilege bars a civil action for damages for communications made '[i]n any . . . judicial proceeding,'" subject to certain exceptions set forth in the statute.  (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360.)  "'[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.'"  (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)  "The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'"  (*Ibid.*; see *Johnson v. Ralphs Grocery Co.* (2012) 204 Cal.App.4th 1097, 1104 (*Johnson*) [litigation privilege applies to "'prelitigation communications involving the subject matter of the ultimate litigation'"].)

The litigation privilege bars virtually all tort claims based on such communications, except malicious prosecution.  (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 209; see *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1492 ["the litigation privilege has been held to apply broadly to *all* but a very few types of tort actions based on a privileged communication"].)  This includes claims for intentional infliction of emotional distress, interference with prospective economic advantage, and invasion of privacy, among others.  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215.)  The litigation privilege also may apply "to suits for wrongful conduct outside the scope of

traditional tort claims" (*Feldman,* at p. 1492), including causes of action for breach of contract and breach of the covenant of quiet enjoyment where the same communicative conduct formed the basis for the tort and breach causes of action (*id.* at pp. 1494-1498), and for breach of the covenant of good faith and fair dealing where the claim was based on protected conduct (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 886).  The litigation privilege is " 'interpreted expansively.' " (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 662.)  "Any doubt about whether the privilege applies is resolved in favor of applying it."  (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.)

Here, Cruz alleged causes of action for obstruction of an easement, interference with sale of property, intentional infliction of emotional distress, and breach of the covenant of quiet enjoyment against the Dingizians.[3]  As discussed, the alleged bases for these causes of action included the Dingizians' "legal threats" or "threats of frivolous litigation" as conduct for which Cruz sought relief.  Cruz's stricken claims are all based on the Dingizians' alleged statements and conduct in settlement negotiations and in anticipation of filing their civil complaint against him.  The alleged statements and conduct directly relate to the object of the underlying lawsuits, that is, the parties' use of and alleged interference with the easement.  The litigation privilege thus provides a substantive defense to Cruz's causes of

---

[3]    The cross-complaint also alleged causes of action for "Intentional Destruction of Required Road Material for Fire Department Vehicles" and trespass, but the Dingizians do not argue that any allegations supporting those causes of action arose from protected activity.

action based on such " 'prelitigation communications involving the subject matter of the ultimate litigation.' " (*Johnson, supra,* 204 Cal.App.4th at p. 1104.)

Cruz argues he "submitted declarations, photographs, and historical context of physical interference, including obstructions and confrontations," "sufficient to establish a prima facie case for intentional torts and easement interference." However, evidence of physical interference or other unprotected activity is not relevant to whether Cruz could establish a probability of success on the merits of his claims based on the allegations of protected activity identified by the court in the first step.[4]

---

[4] Before oral argument, Cruz moved to augment the record to include his objections to plaintiffs' evidence in support of the special motion to strike and Cruz's declaration and exhibits, which he filed in the trial court with his opposition to the special motion. We grant the request to augment the record with these materials.

Cruz also seeks judicial notice of several documents and photographs attached to his reply brief. We deny judicial notice of these materials. (See Cal. Rules of Court, rule 8.252(a)(2)(B)-(C) [party seeking judicial notice must file a motion stating "[w]hether the matter to be noticed was presented to the trial court and, if so, whether judicial notice was taken by that court;" and "[i]f judicial notice of the matter was not taken by the trial court, why the matter is subject to judicial notice under Evidence Code section 451, 452, or 453"].) To the extent the reply brief attaches material unrelated to the protected activity at issue, judicial notice is also denied based on relevance grounds. (*City of Hesperia v. Lake Arrowhead Community Services Dist.* (2023) 93 Cal.App.5th 489, 508-509 [appellate court " 'may decline to take judicial notice of matters not relevant to dispositive issues on appeal' "].)

Accordingly, Cruz cannot meet his burden under the second step of the section 425.16 analysis because he cannot demonstrate a probability of prevailing on his claims.  (*Flatley*, *supra*, 39 Cal.4th at p. 323 [litigation privilege "may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing"]; *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 814 [" 'A plaintiff cannot establish a probability of prevailing [in responding to a special motion to strike] if the litigation privilege precludes the defendant's liability on the claim' "].)

## DISPOSITION

The trial court's order granting the special motion to strike is affirmed.  The Dingizians may recover their costs on appeal.

MARTINEZ, P. J.

We concur:

FEUER, J.

STONE, J.

19