[No. B160125. Second Dist., Div. Five. Aug. 26, 2003.]

PAUL WANG, Plaintiff and Appellant, v.
STEVEN M. HARTUNIAN, Defendant and Respondent.

**COUNSEL**

John B. Murdock and Howard Posner for Plaintiff and Appellant.

Musick, Peeler & Garrett, William A. Bossen and Tomas A. Ortiz for Defendant and Respondent.

## OPINION

**ARMSTRONG, J.**—Plaintiff Paul Wang appeals the dismissal of his action against defendant Steven Hartunian following the grant of the defendant's SLAPP (strategic lawsuit against public participation) motion. ▮ Because we conclude that a citizen's arrest is not protected activity under the anti-SLAPP statute, we reverse.

### FACTS

In November 1998, a dispute arose between Wang and Hartunian concerning the latter's use of a vacant lot he owned, located between his residence and the home of Wang's mother. Wang's mother and sisters filed a lawsuit on August 18, 2000, in an attempt to enjoin Hartunian from developing the lot. Subsequently, the relationship between the parties deteriorated and, in May 2001, Hartunian sought and obtained both temporary and permanent restraining orders. Under the terms of the permanent restraining order, Wang was ordered not to "contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any messages to, follow, stalk, destroy the personal property of, disturb the peace of, keep under surveillance, or block movements in public places of Hartunian, his family, and workers … on his property." Wang was to remain 50 yards away from Hartunian and his property. The order specifically provided that "the law enforcement agency shall advise the restrained person of the terms of the order and then shall enforce it. Violations of this restraining order are subject to federal and state criminal penalties. By California state law, violation of this temporary restraining order is a misdemeanor … or may be punishable as a felony."

On four occasions between May and November of 2001, Hartunian summoned the Los Angeles Police Department to deal with Wang's purported violations of the restraining order. Hartunian declared that, on November 4, 2001, he observed Wang standing at the property line, threatening and yelling at him in violation of the restraining order. Hartunian called the police and reported the incident. The police inquired of Hartunian whether he wished to make a citizen's arrest. Hartunian signed a Private Person's Arrest form, pursuant to which Wang was arrested and detained. He posted $500 bail, was released, and no further action was taken against him.

Wang filed this complaint against Hartunian on January 11, 2002, alleging causes of action for false arrest/imprisonment, intentional infliction of emotional distress, abuse of process and malicious prosecution, all arising from

his arrest in November of the previous year. Hartunian filed a demurrer and a special motion to strike pursuant to Code of Civil Procedure section 425.16. The trial court granted the latter motion on June 24, 2002, ruling "C.C.P. sec. 425.16 is to be broadly construed.... Communications with the local police department in connection with enforcement of a restraining order come within the scope of the statute. Defendant has made the required prima facie showing.... The court has reviewed the pleadings and the evidence admitted ... and concludes that the plaintiff has failed to meet the burden imposed on him to establish a reasonable probability of success as to the claims asserted. The moving party correctly points out the several defects in the plaintiff's complaint."

Wang timely appealed dismissal of his lawsuit.

On appeal, Wang contends that Hartunian's conduct in arresting Wang was not activity subject to the anti-SLAPP statute. He further argues that he demonstrated the requisite likelihood of success on the merits sufficient to defeat the SLAPP motion.

## DISCUSSION

Code of Civil Procedure section 425.16 provides in pertinent part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subdivision (b)(1).) An "act in furtherance of a person's right of petition or free speech" is defined to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;... (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e).)

"Section 425.16 posits ... a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' (*Braun v. Chronicle*

*Publishing Co*. (1997) 52 Cal.App.4th 1036, 1043 [61 Cal.Rptr.2d 58]). If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); see generally *Equilon [Enterprises v. Consumer Cause, Inc*. (2002)] 29 Cal.4th [53] at p. 67.) As we previously have observed, in order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have ' " 'stated and substantiated a legally sufficient claim.' " ' (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564],… quoting *Rosenthal v. Great Western Fin. Securities Corp*. (1996) 14 Cal.4th 394, 412 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733], quoting *Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548 [46 Cal.Rptr.2d 880]; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

Hartunian maintains that Wang's causes of action for false arrest, intentional infliction of emotional distress, abuse of process and malicious prosecution arise from Hartunian's act of petitioning local police to arrest Wang. However, the basis of Wang's complaint, and the evidence presented in support thereof, is that Hartunian arrested Wang pursuant to the provisions of Penal Code section 847; that is to say, he made a citizen's arrest. Our first task is thus to determine whether making a citizen's arrest was an act in furtherance of Hartunian's right of petition or free speech under the state or federal constitutions. If, and only if, we determine that the arrest was protected activity under the SLAPP statute need we consider whether Wang has established that his claims have any merit.

Relying on *Equilon Enterprises v. Consumer Cause, Inc*., *supra*, 29 Cal.4th at pages 64–65, Hartunian contends that activity which is absolutely privileged under Civil Code section 47, subdivision (b), is necessarily protected activity under section 425.16, a proposition in which Wang apparently concurs. Civil Code section 47 provides in pertinent part: "A privileged publication or broadcast is one made:… (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 … of the Code of Civil Procedure." (Civ. Code, § 47, subd. (b).) As the Supreme Court has explained, the privilege of Civil Code section 47 "is now held applicable to any communication, whether or not it amounts to a publication …, and all torts except malicious prosecution." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365], citations omitted.) Hartunian argues that

"Although no case has considered whether a report to local police, or specifically a request to police to have an individual placed under 'citizen's arrest,' is a statement falling under Section 425.16; there can be little doubt but that it is protected activity under ... Civil Code § 47(b)." ■ While we agree that a report to police is subject to the privilege of Civil Code section 47, subdivision (b), we conclude that placing someone under a "citizen's arrest" is not a "publication or broadcast" within the meaning of section 47, and thus not privileged.

In *Williams v. Taylor* (1982) 129 Cal.App.3d 745 [181 Cal.Rptr. 423], the Court of Appeal held that the litigation privilege shields a citizen from liability based on a report to police of potential criminal activity: "[A] communication concerning possible wrongdoing, made to an official government agency such as a local police department, and which communication is designed to prompt action by that entity, is as much a part of an 'official proceeding' as a communication made after an official investigation." (*Id.* at p. 753; see also *Hunsucker v. Sunnyvale Hilton Inn* (1994) 23 Cal.App.4th 1498, 1503 [28 Cal.Rptr.2d 722].) Thus, had Hartunian summoned the police and reported to them Wang's conduct with the intention of prompting his arrest, and had the police, after conducting an investigation based upon that report, arrested Wang, Hartunian's conduct of making a report to the police might fall within the ambit of Civil Code section 47, subdivision (b).[1] According to the evidence in the record, however, that is not what happened. Rather, after the police declined to arrest Wang based on Hartunian's report, Hartunian arrested Wang, and delivered him to the police, which he was obligated to do pursuant to Penal Code section 847, subdivision (a). Hartunian cites no authority which suggests that his conduct in arresting Wang and delivering him to the police is an act in furtherance of his right to petition or free speech.[2]

Hartunian maintains that his conduct in arresting Wang was purely communicative, that is, simply a request to the police that they take custody of Wang. Here Hartunian fails to distinguish between his actions in arresting Wang and the police's actions in accepting custody of Wang following the

---

[1] There is a split of authority on the issue of whether Civil Code section 47's privilege is absolute, and thus applicable to knowingly false reports (see, e.g., *Williams v. Taylor, supra,* 129 Cal.App.3d 745; *Hunsucker v. Sunnyvale Hilton Inn, supra,* 23 Cal.App.4th 1498) or qualified, that is, applicable only to those reports made in good faith (see *Fenelon v. Superior Court* (1990) 223 Cal.App.3d 1476 [273 Cal.Rptr. 367]; *Devis v. Bank of America* (1998) 65 Cal.App.4th 1002 [77 Cal.Rptr.2d 238].) While the issue is an interesting one, it is not properly before us, since Wang's complaint does not allege a cause of action for defamation based on Hartunian's report to the police, but rather alleges causes of action for false arrest, abuse of process and malicious prosecution based on Hartunian's citizen's arrest of Wang.

[2] While Hartunian did not physically seize Wang and deliver him to the police, it is undisputed that the arrest was a citizen's arrested consummated by Hartunian and not the police.

citizen's arrest. Hartunian further argues that the decision of the police to take Wang into custody was discretionary, and that he cannot be liable for the police officer's exercise of discretion: "... under Penal Code § 142, a police officer is never obligated to arrest, imprison or otherwise instigate criminal proceedings against someone merely at the direction of a private citizen, particularly where the police officer is satisfied that insufficient grounds existed for making the arrest. (73 [Ops.Cal.Atty.Gen.] 291, citing Penal Code § 849.)" Again, Hartunian ignores the fact that Wang sued him for false arrest, and did not sue the police for either false arrest or false imprisonment.

In the opinion of the Attorney General that Hartunian cites, the following question was presented: "Must a California peace officer accept custody of a person who has been placed under citizen's arrest for a crime when requested to do so by the person who made the arrest if the officer is satisfied that there is insufficient grounds for making a criminal complaint against the person arrested?" The attorney general's unqualified answer, under the heading "Conclusion," is yes: "A California peace officer must accept custody of a person who has been placed under citizen's arrest for a crime when requested to do so by the person who made the arrest even though the officer is satisfied that there is insufficient grounds for making a criminal complaint against the person arrested but the officer may then release the person from custody pursuant to Penal Code section 849, subdivision (b)(1)." (73 Ops.Cal.Atty.Gen. 291 (1990).) As the attorney general explained, "the manifest purpose of the Legislature in imposing this duty was to minimize the potential for violence when a private person restrains another by a citizen's arrest by requiring that a peace officer (who is better equipped by training and experience) accept custody of the person arrested from the person who made the arrest." (*Ibid.*)

Thus, it is true, as Hartunian asserts, that "a police officer is never obligated to arrest ... someone merely at the direction of a private citizen"; however, the police were in fact obligated to take custody of Wang "merely at the direction" of Hartunian, that is, when Hartunian informed the police that he had arrested Wang.

Hartunian insists, however, that his request that the police take custody of Wang was a "clear communication" rather than a "non-communicative action." It is true, as Hartunian argues, that all he did to cause the police to take custody of Wang was to communicate, orally and in writing, that he wanted Wang to be arrested and taken into custody. However, at the time of that communication, Hartunian had already arrested Wang. That is to say, Hartunian, and not the police, arrested Wang. The police merely accepted custody of Wang following his arrest.

■ As our Supreme Court has made clear, there is a distinction between injury arising from (privileged) communicative acts and injury arising from

(nonprivileged) noncommunicative acts. (See, e.g., *Ribas v. Clark* (1985) 38 Cal.3d 355, 364 [212 Cal.Rptr. 143, 696 P.2d 637] [eavesdropping is noncommunicative and thus not privileged, while testimony which resulted from eavesdropping is communication and therefore privileged]; *Kimmel v. Goland* (1990) 51 Cal.3d 202, 209 [271 Cal.Rptr. 191, 793 P.2d 524] [acts of tape recording not privileged, while publication or broadcast of information contained in recorded conversations privileged]; see also *Susan S. v. Israels* (1997) 55 Cal.App.4th 1290, 1299 [67 Cal.Rptr.2d 42] [unauthorized reading of confidential medical records are noncommunicative acts, and thus not privileged].)

Our colleagues in Division Eight of this District Court of Appeal recently considered whether, in the context of ongoing litigation, communicative behavior which resulted in a physical taking of property was privileged under section 47, subdivision (b). In *Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009 [132 Cal.Rptr.2d 602] (*Drum*), the defendant attempted to levy on the judgment in an underlying litigation while a stay was in effect. The plaintiff sued for abuse of process, and the trial court granted the defendant's SLAPP motion and struck the complaint. The appellate court reversed, holding that the act of levying, even though it involves a privileged communication on the part of the party levying, is conduct, not communication, and therefore not privileged under Civil Code section 47, subdivision (b), which protects only communications. Said the court: "Here, the actual levying on property falls squarely on the side of conduct. This becomes clearer when one considers the process by which judgments are enforced. Initially the judgment is prepared, then the judgment creditor may make application for a writ of execution, the writ is issued, and instructions are given to the levying officer. The 'essential nature' of this part of the process is communicative, at least from the perspective of the judgment creditor and its lawyer. The various documents filed or delivered reflect statements that there is a judgment, that it is subject to execution, and that there exists certain property subject to levy. [¶] The line is crossed when the levying officer, on behalf of the judgment creditor, actually levies on the property. That is a taking: the act of removing property from one source (here a financial institution) and depositing it in a place controlled by the levying officer. Whatever statements may be inherent in that part of the process are tangential, or in the words of the court in *Rubin* [*v. Green* (1993) 4 Cal.4th 1187] [17 Cal.Rptr.2d 828, 847 P.2d 1044], not 'essential.' " (*Drum, supra*, at p. 1026.)

Among the circumstances of which Wang here complains is the fact that he ended up in police custody, having to post bail in order to secure his freedom. The factors that led to that circumstance involved, among other things, Hartunian's communication with governmental officers, as did the levy in *Drum*. Like the levy in *Drum*, however, the line between communication and

conduct was crossed when Hartunian arrested Wang and caused the police officers to take Wang into custody. *Drum* holds that the party requesting the wrongful levy is liable for the physical act of levy even though that party did not perform the physical act. So too, Hartunian is responsible for the physical act of restricting Wang's freedom of movement even though he personally never physically restrained Wang.

The court in *Drum* also noted that the extension of the litigation privilege under the facts of that case would eliminate the tort of abuse of process. Said the court: "[T]he failure to distinguish between conduct and communication runs the risk of essentially eliminating the tort of abuse of process, something we do not believe the Legislature intended when it amended the litigation privilege in the 1873–1874 session to include publications made in judicial proceedings. (Historical Note, 6 West's Ann. Civ. Code (1982 ed.) foll. § 47, p. 239.) Given the expansion of the privilege to matters not only inside but outside the courtroom, and not only during trial but before and after trial, to sweep conduct within the privilege's ambit would in all likelihood nullify the tort. If that is the inevitable next step, it should be undertaken by the Legislature, not by the judiciary's expansive reading of a statute that itself was limited in its origins." (*Drum, supra,* 107 Cal.App.4th at p. 1028.)

Similarly, adoption of Hartunian's position would eliminate tort liability for false citizen's arrest so long as the citizen promptly takes the arrested person before a magistrate or delivers him or her to the police, as Penal Code section 847, subdivision (a) requires. Like the court in *Drum*, we do not believe that the Legislature intended this consequence in enacting the SLAPP statute.

■ In sum, Hartunian failed to meet his threshold burden of showing that Wang's causes of action arise from protected activity. Consequently, we have no need to proceed to the second step of the two-step SLAPP analysis concerning the probability that Wang will prevail on his claims.

## DISPOSITION

The judgment is reversed. Wang is to recover his costs on appeal.

Turner, P. J., and Mosk, J., concurred.

A petition for a rehearing was denied September 12, 2003, and respondent's petition for review by the Supreme Court was denied December 10, 2003. Kennard, J., Baxter, J., and Werdegar, J., were of the opinion that the petition should be granted.