Filed 1/30/25  Nguyen v. Ramirez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VICTORIA NGUYEN, | D083643 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00051003-CU-MC-CTL) |
| IRENE RAMIREZ et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Victoria Nguyen, in pro. per., for Plaintiff and Appellant.

Grimm, Vranjes, Greer, Stephan & Bridgman, Gregory Stephan and Matthew Morache for Defendants and Respondents Irene Ramirez and Krystal Moore.

Macdonald & Cody, Gregory P. Konoske, D. Amy Akiyama and Megan K. Hawkins for Defendant and Respondent Clifton Demery.

## INTRODUCTION

Victoria Nguyen sued her neighbors—Irene Ramirez, Krystal Moore, Clifton Demery, and Omar Flores—after they gave witness statements to police in connection with a report of an accident involving Nguyen's car and Flores's bicycle.[1]  In her complaint, Nguyen asserted five causes of actions, for nuisance, general negligence, gross negligence, defamation, and intentional infliction of emotional distress.

Ramirez and Moore filed a special motion to strike the complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[2]  Demery separately filed an anti-SLAPP motion to strike the complaint against him. The trial court granted both motions.  Nguyen appeals, asserting the court erred in finding her causes of action arose from protected activity and that she had failed to meet her burden to show a probability of prevailing on the merits.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### *The Accident and Police Investigation*

On August 28, 2021, around 9:30 a.m., there was an accident involving Nguyen's vehicle and Flores's bicycle at the corner of Vista San Jose and Avenida De Las Vistas in San Diego, California.  Flores summoned police and made a report of the accident.  According to the police department's initial

---

[1]  Although Flores is a named defendant in Nguyen's lawsuit, he was not a party to the motions at issue and is not a party in this appeal.

[2]  All undesignated statutory references are to the Code of Civil Procedure.

2

traffic collision report,[3] the officer "arrived on scene and saw [Flores] with his young daughter sitting on a child bicycle seat attachment." Flores "stated he had been struck by a female motorist while crossing the street." During his investigation, the officer took witness statements from Ramirez, Moore and Demery. The officer attempted to contact Nguyen at the time of the initial response but was not successful.

The certified transcript of the police department's bodyworn camera footage shows that Flores told the officer he "was going down the street on the curb . . . and the sidewalk" and that he hit Nguyen's car in the front right bumper. Nguyen "was turning to her left but she never checked her right." Flores told the officer that "two or three" neighbors "mentioned that there's been issues with" Nguyen. He said that Nguyen "just said, I'm sorry, and . . .

---

[3] The trial court sustained defendants' objection to the police report on the ground that it is inadmissible hearsay and inadmissible pursuant to California Vehicle Code section 20013, which provides that "[n]o such accident report shall be used as evidence in any trial, civil or criminal, arising out of an accident[.]" (*See Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 795 [in evaluating an anti-SLAPP motion, "properly submitted admissible evidence should be considered"]; *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1147 ["the proper view of 'admissible evidence' for purposes of the SLAPP statute is evidence which, by its nature, is capable of being admitted at trial"].) In her reply brief on appeal, Nguyen asserts for the first time that the trial court abused its discretion in excluding the police report. We do not generally consider arguments raised for the first time in a reply. (*Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1387–1388 [appellate court will not consider arguments raised for the first time in reply because it deprives respondent of opportunity to respond].) But even if we were to consider Nguyen's late argument, we would reject it because the only authority cited by her supports the trial court's decision to exclude the report. (*People v. Baeske* (1976) 58 Cal.App.3d 775, 781 ["The trial court was correct . . . in ruling that the proffered police report was inadmissible hearsay."].) Here, we refer to the police report for background and context only, as the defendants do in their briefs.

left." He suggested he was not going to report the accident "because nothing really happened" but he did because his neighbors "mention[ed] that there's been erratic behaviors with" Nguyen.

According to the transcript, when asked by the police officer if she saw anything, Ramirez responded, "My daughter [Moore] did." Ramirez then explained her concern that Nguyen was "picking up everything" they were saying because Nguyen had "like 20 cameras all over." Moore told the officer she "was upstairs in the corner bedroom, and . . . heard him yelling the—the gentleman yelling, Hey, stop. Stop. Stop. And so [she] looked out the window and right then, the silver car was pulling out." She said the car "pulled straight out the driveway. It was going straight down to turn right. And she hit him with her front end, right on his tires . . . and knocked him over to—he was able to catch himself with his foot." She also noted "he had his daughter with him, . . . [a]nd he was like, Hey, you hit me. And she didn't get out. . . . I'm assuming she said sorry, 'cause then he said, you know, Sorry is not gonna cut it. Like you hit me. You need to watch where you're going. And he kind of pulled away, 'cause he had his daughter with him and she just drove off." She further stated that Nguyen "definitely hit him hard enough to knock his bike over."

The bodyworn camera footage does not show any of the officer's conversations with Demery.

In March 2022, the police officer submitted an amended report of the incident stating that, "after review and direction from several Detective Sergeants," he was advised the incident did not meet the "criteria for a traffic collision, as there was no damage or injury caused by the incident." Thus, Nguyen "was not in violation" of the vehicle code. Additionally, the "doorbell video surveillance footage" collected by the police department showed that

Flores was in violation of the vehicle code for riding his bicycle against traffic and "thus can be considered at fault for the collision."

## II.

### *Nguyen's Lawsuit*

Nguyen filed suit against Flores, Demery, Ramirez and Moore. She asserted five causes of actions, for nuisance, general negligence, gross negligence, defamation, and intentional infliction of emotional distress.

According to Nguyen's complaint, Demery, Ramirez and Moore resided on the same cul-de-sac as her. Flores lived in an adjacent condominium building in the same neighborhood. Nguyen alleged that Flores was "riding recklessly, and illegally on the sidewalk and on the wrong side of the traffic flow." He "intentionally" failed to stop his bicycle as he attempted to cross through the street and "hit" her car "[purposefully]." She claimed that her "video footage" showed that Flores "did all the[se] illegal things" and that the police department's "internal affairs investigation also concluded and agreed to this assessment." "According to the subpoenaed bodycams," the defendants "told responding officers that they witnessed everything, from the start to the end so they all" should have seen Flores "riding illegal[ly] on the sidewalk and did not stop his bike at through-street and intended to hit plaintiff's car." Rather than report the truth, defendants instead "colluded with each other and claimed the other way around that [Nguyen] hit defendant Flores."

Nguyen further alleged that, after Flores hit her car, "he continued riding his bike away from the incident spot." Flores "continued swirling around the cul-de-sac on his perfect-in-shape bike and started cursing [Nguyen]." He then "demanded" that Nguyen "apologize for [her] illegal riding." She asserted that, "[b]ecause there was no injury due to a mere

5

touch caused by the biker," she "was not required to exchange insurance info" and did not "need[ ] to stop her car to get out either."

Nguyen alleged the defendants colluded to make "defamatory statements" to the police. Specifically, she claimed Ramirez and Moore made "malicious, defamatory statements to officers and other neighbors," including (1) that she "has a history of driving erratic in the neighborhood," (2) that "they saw the hit and run collision (a wreck, a crash) not a mere touch," (3) that she "has 20 cameras listening to their conversation," (4) that they "had the incident recording in video depicted of exact statements that they were going to provide to officer," and (5) that she hit Flores and knocked him over.

Meanwhile, she alleged Demery "provid[ed] defamatory statements" to Flores and Ramirez, and then those statements were relayed to Moore and another neighbor. Demery "witnessed the incident" and saw that "Flores did not obey the traffic law" and intentionally hit Nguyen's car. Nevertheless, she claimed that with Demery's "association with [two other neighbors]," he "decided to lie about how the incident happened that [Nguyen] hit Flores." Demery told the other defendants "about the fabricated chains of events" and that Ramirez then "used [it] as part of her defamatory statement of facts to others." Finally, Nguyen alleged Demery also made defamatory statements to Flores, Ramirez, Moore and another neighbor that "he witnessed [Nguyen] driving erratic in the neighborhood, getting in neighbor's personal space" without any "legal basis for his claim on public space."

Nguyen claimed defendants made these same statements to "other members of the community who are known to defendants (their spouses, their adult children, and their friends), and each of them, but unknown to plaintiff at this time." They conspired with the other defendants to inflict emotional distress upon her. Ramirez was seen talking with Demery and other

6

neighbors after the incident and "this is how each of them provided resonated and identical malicious defamatory statements to responding officers."

She also alleged Ramirez and Moore have a history of "biased, malice action against" her. Specifically, Nguyen claimed that in 2012 Ramirez and Moore told a guest of hers to not park in front of their home; that, in 2018, Ramirez's son verbally attacked Nguyen; that Moore's dog defecated in Nguyen's backyard; and that Ramirez was seen talking to another neighbor.

Nguyen similarly claimed Demery "has a history of harassing another Asian family." Specifically, Nguyen alleged that Demery "banged this family's door in a pre-Covid time" and claimed they "reported his classic car" was "parked more than 72 hours" on the side of their home, and that in 2022 he threatened an elderly Asian person "about a parking issue again that he had no legal basis for" and that Demery would let his wife beat the man up.

Finally, Nguyen alleged she "received a threatening letter" from the police department stating that "a criminal complaint" had been filed regarding the incident. She alleged she suffered harm arising from damages associated with clearing her name from this "crime incident."

III.

*Defendants' Anti-Slapp Motions*

Ramirez and Moore filed an anti-SLAPP motion in August 2023, while Demery filed one in November 2023. In both motions, defendants argued the causes of action in Nguyen's complaint arise from communications protected by the anti-SLAPP statute. (§ 425.16.) They also argued that Nguyen could not meet her burden of establishing a probability of success because they enjoyed the litigation/official proceeding and common interest privileges pursuant to Civil Code section 47, subdivision (b).

7

A.    *Ramirez's and Moore's declarations*

In support of their motion, Ramirez and Moore filed declarations stating that they told responding officers the truth about what they had respectively witnessed to help the officers with their investigation, that their statements were made on their own personal knowledge, and that they did not harbor any ill-will or hatred towards Nguyen. They both stated that "[o]n August 28, 2021, the police asked [them] for information regarding a vehicle and bicycle accident that occurred that same day on the cul-de-sac street where [they] lived." They further attested that they have never communicated with Flores regarding Nguyen. They did not call the police to the scene. (2 CT 444, 446)!

B.    *Demery's declaration*

Demery submitted a declaration that his home and Nguyen's home were located on the same cul-de-sac. Both before and after the day of the accident, Demery observed Nguyen taking photographs while driving a vehicle in the vicinity of the cul-de-sac. He did not believe it was safe to drive while taking photographs.

On the morning of the accident, Demery was outside his home when he observed a man on a bicycle, with a child as a passenger. Demery observed Nguyen driving her vehicle out of the cul-de-sac while looking towards his garage. He yelled "stop" because he was afraid the bicyclist and Nguyen would collide. He then witnessed "a collision/contact."

Demery further declared that police officers responded to the scene, asked him for information regarding Nguyen and the incident, and that he "truthfully told the officers" what he "personally recalled witnessing to help them with their investigation." He did not collude with any of his neighbors to frame Nguyen for a crime nor did he instruct any of his neighbors to make

8

misrepresentations to the responding officers. He did not make any misrepresentations to any of his neighbors regarding what he personally recalled witnessing. Finally, Demery declared that he did not harbor any ill-will or hatred towards Nguyen.

C.    *Trial Court Rulings*

In separate rulings, the court granted both anti-SLAPP motions. The court ruled that all the causes of action in Nguyen's complaint were "premised on witness statements" that the defendants made to police officers about the "bicycle versus car collision." It determined "[t]his speech falls under section 425.16(e)(2) such that" defendants met their "burden on the first prong of the anti-SLAPP analysis."

Next, the trial court determined that Nguyen did not meet her burden in establishing a probability of prevailing on the merits of her case pursuant to section 425.16(b)(1). In this regard, it ruled that Nguyen failed to "demonstrate the existence of malice sufficient to overcome the [Civil Code] section 47 subdivision (b) privilege." She did "not establish[ ] a probability of prevailing on the merits" on all causes of action. It determined, "[o]n the other hand, the evidence submitted by [defendants] demonstrates an absence of malice." The court found the evidence established their belief that "the statements made in response to the police officer's questions were truthful," and were made in the context of the police investigation into the collision. The court also noted Nguyen failed to demonstrate that any of the defendants' statements were false, that defendants knew any statements were false or that defendants made any statements with reckless disregard for the truth.

9

DISCUSSION

I.

*Legal Standards*

Section 425.16 provides a procedure for striking "lawsuits that are 'brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' " (*Kibler v. Northern Inyo County Local Hosp. Dist.* (2006) 39 Cal.4th 192, 197.) Under section 425.16, the "trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)

Section 425.16 provides, in pertinent part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

A court resolves an anti-SLAPP motion in two steps. " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819–820 [cleaned up].) " 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Id.* at p. 820.)

"A defendant satisfies the first step of the analysis by demonstrating that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' (*Equilon* [*Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53,] 66), and that the plaintiff's claims in fact *arise* from that conduct (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063)." *(Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) Subdivision (e) provides that [an] " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"A defendant's burden on the first prong is not an onerous one." (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 112.) A defendant need only make a prima facie showing that plaintiff's claims arise from the defendant's constitutionally protected free speech or petition rights. (*Ibid.*) "If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016)

11

1 Cal.5th 376, 384 (*Baral*).) This second step is like a summary judgment procedure. (*Ibid.*) To establish the requisite probability of prevailing at this second prong, the plaintiff need only have stated and substantiated a legally sufficient claim. (*Ibid.*) " 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

We review an order granting or denying an anti-SLAPP motion de novo. In doing so, we consider the pleadings and supporting and opposing affidavits upon which the liability or defense is based. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

II.

*No Abuse of Discretion in Allowing Demery's Late-Filed Anti-SLAPP Motion*

We first address, and reject, Nguyen's claim that the trial court abused its discretion in allowing Demery to file his untimely anti-SLAPP motion.

The anti-SLAPP statute provides that a motion to strike "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." (§ 425.16, subd. (f).) Nguyen served her amended complaint on Demery on July 31, 2023. Demery had been unrepresented by counsel until October 31, 2023. On November 2, 2023, the court heard and granted Demery's ex parte application for leave to file an anti-SLAPP motion more than 60 days after service.

"While a trial court enjoys considerable discretion regarding whether to allow the late filing of an anti-SLAPP motion," a court in exercising that discretion may consider the purpose of the anti-SLAPP statute, the length of the delay, the reasons offered by the moving party for the delay, and the

potential prejudice to the plaintiff. (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 784, 787 [trial court abused its discretion in ruling on special motion to strike filed nearly two years after the filing of the complaint, where at the time the motion was filed "the parties had already completed a substantial amount of discovery, and the trial was scheduled to commence in less than three months."].) "The burden is on the party complaining to establish an abuse of discretion." (*Hoang v. Tran* (2021) 60 Cal.App.5th 513, 526 [cleaned up].)

Here, although Demery's anti-SLAPP motion was late by more than a month, Demery was not represented by counsel until he filed it, the matter was still in its early stages as the case management conference had not taken place, no trial or related dates had been set and Demery had not been deposed or propounded written discovery. Under these circumstances, the trial court undoubtedly was within its discretion to conclude that "the anti-SLAPP statute [could] fulfill its purpose of resolving the case promptly and inexpensively." (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 645.)

III.

*No Error in Granting Defendants' Anti-SLAPP Motions*

A. *Protected Activity*

"[T]he only thing the defendant needs to establish to invoke the protection of the [anti-]SLAPP statute is that the challenged lawsuit arose from an act on the part of the defendant in furtherance of her right of petition or free speech." (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 307.) In determining whether a lawsuit arises from protected speech, "the critical consideration is whether the cause of action is

13

*based* on the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89.)

Here, defendants' statements to police officers were made in connection with an issue under consideration or review in an official proceeding. This speech falls under subdivision (e)(2) of section 425.16 as it involves "free speech and petition conduct aimed at advancing self government, as well as conduct aimed at more mundane pursuits." (*Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1395 [cleaned up].) Specifically, police officers were summoned to investigate a traffic collision and took witness statements from defendants in the course of that investigation. "The 'official proceeding' privilege has been interpreted broadly to protect communications to or from *governmental* officials which may precede the initiation of formal proceedings." (*Slaughter v. Friedman* (1982) 32 Cal.3d 149, 156.) "In our view, a communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, and which communication is designed to prompt action by that entity, is as much a part of an 'official proceeding' as a communication made after an official investigation has commenced." (*Williams v. Taylor* (1982) 129 Cal.App.3d 745, 753.)

The policy underlying protecting this speech is " 'to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing.' In order for such investigation to be effective, 'there must be an open channel of communication by which citizens can call . . . attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of liability for libel." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 364 [cleaned up].) "The law is that communications to the

14

police are within [anti-]SLAPP." (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 941 (*Comstock*).)

Nguyen also alleged defendants made these same statements to "other members of the community who are known to defendants (their spouses, their adult children, and their friends)," but were "unknown to plaintiff at this time." Because all community members share an interest in keeping their streets safe and reporting accidents to law enforcement, those statements were made in connection with an issue of public interest and are also protected. (See § 425.16, subd. (e)(4); *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 371–383 [tenant's statement telling prospective buyers that a registered sex offender lived nearby merited anti-SLAPP protection under section 425.16, subd. (e)(4)]; *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 111 [statements made at a parents' meeting about the reasons for a college football coach's termination constituted speech in connection with a public issue or a matter of public interest within the meaning of section 425.16, subd. (e)(4)]; *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1233 [public interest "has been broadly construed to include . . . private conduct . . . that affects a community"].)

Moreover, Nguyen did not clearly identify what defendants allegedly said to these "other members of the community," nor did she clearly identify to whom they made the statements. So even if not protected on their own, such vague and undefined allegations are "merely incidental" to protected conduct and, as such, fall within the anti-SLAPP statute. (*Comstock*, *supra*, 212 Cal.App.4th at p. 946.) In *Comstock*, the defendant allegedly published false statements about the plaintiff to the police and others claiming sexual assault. (*Id.* at p. 942.) The court held the defendant's complaint to the

15

police brought the suit within the anti-SLAPP statute. (*Ibid*.) The plaintiff there also alleged the defendant made statements about the sexual harassment to "friends," which the court found was "a generic allegation unsupported by any specific detail—not as to what was said, not as to whom." (*Id*. at p. 946.) Like here, the court determined "the vague allegation" was merely "incidental" to the protected conduct and thus also "within [anti-]SLAPP." (*Ibid*.; *Fox Searchlight Pictures*, *supra*, 89 Cal.App.4th at p. 308 ["a plaintiff cannot frustrate the purposes of the [anti-]SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action' "].)

Nguyen seeks to rely on *Abuemeira v. Stephens* (2016) 246 Cal.App.4th 1291, 1298 (*Abuemeira*), but the defendant's conduct there did not involve protected speech, but rather publishing a videorecorded fight between the parties. (*Id*. at pp. 1294–1295 ["A video recording of an unseemly private brawl, no matter how wide its distribution, is far removed from a citizen's constitutional right of petition or free speech involving a public issue."].) Here, by contrast, defendants' statements in connection with the police investigation of a reported accident involve an issue of public interest. Nguyen's effort to rely on *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696 (Lefebvre) is similarly misplaced. The record there " 'conclusively' established that [defendants' false statements] to the police were 'illegal activity' " and not a "protected activity." (*Id*. at pp. 701, 703.) There is no similar record of illegal activity here.

We conclude that Nguyen's entire complaint falls within the anti-SLAPP statute.

B.  *Probability of Prevailing*

The second step in the [anti-]SLAPP analysis is to determine whether the plaintiff has shown a probability of prevailing on the claim.  Nguyen must show that her claim is "legally sufficient . . . [and] that it is supported by a sufficient prima facie showing, one made with 'competent and admissible evidence.' " (*Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1147.)  Here, the trial court concluded that she failed to meet her burden to show a probability of prevailing on her claims.  We agree.

Nguyen alleges five causes of action that arise from communications defendants made to police officers during their investigation.  However, these statements are privileged under Civil Code section 47, subdivision (b).  To defeat a SLAPP motion, the plaintiff "must overcome substantive defenses." (*Comstock*, *supra*, 212 Cal.App.4th at p. 953.)  Because Nguyen is unable to overcome the litigation/official proceeding and common interest privileges, she fails to show a probability of prevailing on her claims.

Under Civil Code section 47, subdivision (b), "[a] privileged publication or broadcast is one made [¶] . . . [¶] in any . . . official proceeding authorized by law." (*Wang v. Hartunian* (2003) 111 Cal.App.4th 744, 749 ["a report to police is subject to the privilege of Civil Code section 47, subdivision (b)"].) This privilege exists in part because "the circumstances under which an individual observes or suspects a crime will frequently involve rapidly unfolding events, conflicting information, quick impressions, uncertainty, and a need for haste, so that accuracy is difficult to ensure and an erroneous report will be a possibility." (*Devis v. Bank of Am.* (1998) 65 Cal.App.4th 1002, 1009.)  Further, "the importance of free and open access to the police to report suspected criminal activity outweighs the occasional harm that might

17

befall a defamed individual." (*Hunsucker v. Sunnyvale Hilton Inn* (1994) 23 Cal.App.4th 1498, 1504.)

Originally, communications made to "law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond" enjoyed "an unqualified privilege under [Civil Code] section 47 [subdivision] (b)." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 364 (*Hagberg*).) The privilege applied "without respect to the good faith or malice of the person who made the statement." (*Id*. at p. 361.) The California Legislature amended the law, however, effective January 1, 2021, to make the litigation/official proceeding privilege a qualified one. (See Civ. Code, § 47, subd. (b)(5) ["This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report."].) Following this amendment, statements to police describing potential criminal activity or wrongdoing are privileged under Civil Code section 47, subdivision (b), except to the extent the speaker 'know[s] the report [describing potential criminal activity] is false, or with reckless disregard for the truth or falsity' of that statement." (*Id*., subd. (b)(5).) Thus, reports to law enforcement officials now only receive a qualified privilege—reports that are intentionally false or made with reckless disregard of their truth are not privileged.

Moreover, the common-interest privilege in Civil Code section 47, subdivision (c), also makes privileged any "communication, without malice, to a person interested therein, . . . by one who is also interested." As noted above, because the neighbors share an interest in the safety of their streets

18

and reporting accidents to law enforcement, defendants' statements about the accident were made in connection with an issue of public interest. (*Ibid*.) Thus, the defendants' alleged communications with their neighbors are privileged if made without malice. (See *Comstock, supra*, 212 Cal.App.4th at p. 953 [plaintiff's "claim would fail for his inability to show malice, as have the claims of many other plaintiffs who lost motions because of such inability."].) "The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." (*Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370 (*Noel*) [cleaned up].)

Here, because Nguyen failed to allege facts showing that defendants' statements were false or made with malice or reckless disregard for their truth or falsity, the privilege applies to each of Nguyen's causes of action. Nguyen, for example, argued that "Floris admitted Demery (and others) had encouraged him to make a false 911 call." For support, Nguyen cites to the police transcript, but a review of the transcript does not show that Demery encouraged Flores to make a "false" report. Rather, it shows that Flores minimized the impact of the accident by telling the officer "nothing happened" to his bike and that he was "gonna let it go and then . . . two of the neighbors said that there's other situations that happen so it's—it's a good idea to record it."

Nguyen also alleged Ramirez was seen talking with Demery and other neighbors after the incident. She then concluded that "this is how each of them provided resonated and identical malicious defamatory statements to responding officers." Once again, these alleged vague facts do not

19

demonstrate that the defendants' statements were false or made with malice or reckless disregard for the truth.

Additionally, Nguyen claimed defendants have a history of "biased, malice action against" her. Specifically, she alleged Ramirez and Moore told a guest of hers to not park in front of their home; that Ramirez's son verbally attacked Nguyen; that Moore's dog defecated in Nguyen's backyard; and that Ramirez was seen talking to another neighbor. She similarly alleged Demery harassed another family by knocking on their door and threatening them over parking issues. Even if these allegations are true, they do not show that the statements defendants made to responding officers were false or that they acted with reckless disregard for the truth. They also do not establish defendants acted with malice with respect to any conversations they had with neighbors about the accident.

Nguyen further asserted that the defendants "ignored the biker's reckless riding behavior. Such selective reporting suggests a deliberate effort to exaggerate the incident and harm Nguyen's reputation." But the transcript from police bodyworn camera footage reveals that Moore and Ramirez were responding to the officer's questions. Ramirez, for example, answered "I didn't" when asked if she saw anything, while Moore answered the officer's questions about the car and the direction it was driving. The transcript does not show that the officers asked Moore about the "conduct of the biker." It also does not show any of the officers' conversations with Demery.

Finally, Nguyen points to several cases for support, but they do not help her. (*See Abuemeira, supra*, 246 Cal.App.4th at p. 1299 [litigation privilege did not apply because the communication had no relation to a lawsuit]; *Lefebvre, supra,* 199 Cal.App.4th at p. 705 [did not evaluate

20

litigation privilege because submitting a false report to police was not protected under the anti-SLAPP statute]; *Noel, supra,* 113 Cal.App.4th at pp. 1371–1373 [common interest privilege applied because "no reasonable jury could find malice was a motivating cause of [defendant's] statements"].)  In *Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, for example, there was "ample evidence in the record" that defendant "had developed a strong dislike for plaintiffs" and "wished to free himself of any criticism by expelling his opponents from the church." (*Id.* at p. 798.)  The Supreme Court held that the evidence was sufficient to support a jury finding of "malicious or improper motive." (*Ibid*.)  Here, by contrast, Nguyen alleges no facts from which defendants' statements can be reasonably inferred to be false or made with malice or a reckless disregard for the truth.  Indeed, the transcript supports that defendants made their statements in response to the police officer's questions to help them investigate the accident.  They also attested that their statements made to police were truthful and based on their personal knowledge of what they witnessed about the accident.

Because Nguyen has failed to present credible facts that defendants' statements were untrue or made with malice or reckless regard to their truthfulness, defendants' conduct was a protected activity under section 425.16 as well as being privileged under Civil Code section 47.  As a result, the trial court did not err in granting the defendants' anti-SLAPP motions.

21

## DISPOSITION

The trial court's orders granting the anti-SLAPP motions are affirmed. Respondents are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.